In the Matter of the Accounting of J. PAUL CAREY, II, et al., as Executors of GEORGE H. RUTH, Deceased.

Surrogate's Court, New York County, June 18, 1954.

*Lowenstein, Pitcher, Amann & Parr* for executors, petitioners.

*Logan Fulrath* for Clara M. Ruth, respondent.

*A. Edward Masters* for Dorothy R. Pirone, respondent.

*Charles Kaufmann,* special guardian for Daniel J. Sullivan and others, infants, respondents.

*Root, Ballantine, Bushby & Palmer* for President and Directors of Manhattan Company, respondent.

*Leo D. Fitzgerald* for Equitable Life Assurance Society of the United States, respondent.

*Philip G. MacDonald,* respondent in person.

COLLINS, S. The objections to the executors' account presented several issues, but many of the issues have been disposed of by stipulation and there remain for decision only the objec-

tions to: (1) apportionment of estate taxes; (2) allocation of the discount earned on prepayment of the New York estate tax; (3) delivery of a speedboat to the widow on the theory that it was specifically bequeathed, and as supplemental thereto, payment by the estate for the repair and storage of the boat, and for insurance thereon.

(1) The taxable estate included an *inter vivos* trust fund created by the testator, a small trust that had been created nominally by the wife of the testator, a refund annuity policy, and a $10,000 life insurance policy, as well as the assets passing under the will. The widow is the beneficiary under the insurance policy, the beneficiary for life of the small trust fund, and she is entitled to the monthly payments under the annuity until the fund is exhausted. The testator had reserved the right to dispose by will of the income and principal of the large trust, and he expressly exercised that power, giving the income to his widow for her life or for the balance of the trust term, and to his daughters if his widow should die during the trust term. Upon termination of the trust, the corpus will go to the widow and daughters or their issue, under conditions and contingencies not here pertinent. The residuary estate is set up in trust for the life use of the widow, with remainder to the two daughters and a charity.

The Thirteenth paragraph of the will reads: " I direct that all estate, transfer, succession, inheritance, legacy and similar taxes upon or with respect to so much of my estate as passes by, through or under Paragraphs Second, Third, Fourth, Fifth, Sixth and Eighth of this my Last Will, shall be paid out of my residuary estate and there shall be no proration of any such taxes, and I further direct that so much of such estate, transfer, succession, inheritance, legacy and similar taxes as may be assessed against my estate by reason of the inclusion for estate tax purposes of the trust referred to under Paragraph Seventh of this my Last Will, or any other assets not passing by, through or under this my Last Will, shall be apportioned to such trust and assets and shall be charged to and paid therefrom."

The widow's contention that there should be no apportionment of taxes against the assets passing outside the will is contrary to the express terms of the will and is without merit.

The executors propose an equitable apportionment of taxes against the residuary estate and all funds outside the will. One of the daughters and the special guardian of contingent beneficiaries construe the will as manifesting an intent to relieve the residuary estate from all burdens resulting from inclusion

in the taxable estate of all other assets and thus, in effect, giving the residuary estate all the tax deductions, the exemptions and the benefit of the lower tax brackets and charging the outside property at the higher tax levels.

The court reads the will as requiring equitable proration of estate taxes against the residuary estate and the other assets. It is true that the testator could have terminated paragraph thirteenth immediately after his direction against apportionment to the general and specific legatees, and those few words would have resulted in equitable apportionment against all other benefits. However, merely because the testator did advert to tax apportionment against the other assets, we are not bound to read his direction as different from the rule which the statute would apply had he remained silent. Draftsmen of legal instruments frequently prefer an explicit statement of intention rather than leaving it dependent upon inference, presumption or statutory rule. We must read the testator's words fairly and in their context to determine whether he has merely restated the rule or expressed a contrary direction. When we read the full text, we find that the testator has emphatically stated the statutory rule as his own. He said that so much of the estate taxes as are assessed by reason of the inclusion in his taxable estate of the trust and other assets '' *shall be apportioned* to such trust and assets ''. To apportion a burden is to divide or assign it in just proportions. '' Apportionment '' and '' proration '' are the terms used in section 124 of Decedent Estate Law to express the policy of this State respecting equitable allocation of taxes. The testator has said that there shall be no '' proration '' against the general or specific legatees but that taxes shall be '' apportioned '' against the residue and the nontestamentary assets. If it were his purpose to vary the statutory rule of equitable proration, he would hardly have used the very words in which the statutory rule is expressed. On the contrary, it seems clear that having directed '' no proration '' within a limited area, he .explicitly adopted as his own the statutory rule as to all the rest of the assets.

*Matter of Jamison* (272 App. Div. 434) and *Matter of Werle* (N. Y. L. J., June 19, 1952, p. 2433, col. 4) involve quite different situations. The first cited case construed a provision which forgave an indebtedness on condition that the legatee would pay all taxes imposed thereby. In that will, the tax allocation clause was in an entirely separate paragraph. The court considered '' the nature of the legacy and the circumstances surrounding the gift '' (p. 436), as well as the text of the will. In

*Matter of Werle* (*supra*), the court considered not only the trust indenture, but also a compromise agreement pursuant to which the trust was set up, and the surrounding circumstances, and on all of the facts the court found that it was the intention of the parties that the trust fund would represent full payment of the compromise claim and that the full amount of any additional tax caused by the inclusion of the trust in the taxable estate would be borne by a source other than the estate.

Another point of distinction between those cases and this is that each of the instruments which allocated the taxes disproportionately, placed the heavier burden upon its own fund, while in this case the construction of the will urged by respondents would charge the greater share against property not passing under the will. Putting aside for the moment the question of the power of the testator to charge his estate's share of taxes against another fund, we should not attribute such a purpose to him unless it is clear that he is attempting to alter existing rights and obligations under those separate contracts and instruments. In the Seventh paragraph of his will, he exercised a reserved power to change beneficiaries and payments under the trust instrument and he specified precisely the nature and extent of the changes. Nothing in the Thirteenth paragraph indicates that he intended to make — assuming that he could do so — any further modifications. On the contrary, he here speaks only in the terms of the statute and attempts to make no other change than the statute would make for him.

The objections to the equitable apportionment of the estate taxes are, therefore, overruled.

(2) The testator died before the effective date of the revision of section 124. Hence that section as it existed in 1948, the time of his death, is applicable to his estate. The discount for early payment of the New York tax (Tax Law, § 249, subd. 2) was credited by the executors to income. The special guardian objects to this credit, contending that it should have been allocated wholly to principal.

As revised in 1950, section 124 provides that any interest resulting from late payment of the tax and any discount allowed for prepayment of the tax shall be allocated to corpus. The legislative note declares that in the interest of " convenience of administration ", the new statute thus resolved a conflict in the decisions in respect of allocation of the interest and discount. The conflict, insofar as the allocation of interest is concerned, was later put to rest by the decision in *Matter of Gato* (276 App. Div. 651, 661, affd. 301 N. Y. 653). In respect of the discount

earned by prepayment, however, the conflict was more apparent than real. In *Matter of Murdoch* (142 Misc. 186, 188) and again in *Matter of Sinsheimer* (21 N. Y. S. 2d 573) it was held that under the circumstances revealed therein, the discount should accrue to the benefit of income. In *Matter of Jamison* (64 N. Y. S. 2d 786, 791, mod. on another question, 272 App. Div. 434) equitable considerations resulted in crediting the discount to the residuary legatees rather than the specific legatee, while in *Matter of Abrahams* (64 N. Y. S. 2d 785) the equities caused the reverse allocation. In the latter case, Surrogate Foley pointed out that "apportionment of the tax discount is in every instance dependent upon the particular circumstances of each case." In *Matter of Patterson* (196 Misc. 21, 24) the court construed the will as exonerating income from payment of any part of the penalty interest. "Under the circumstances," said the court, "no part of the discount earned by prepayment of the State estate tax should be credited to income." *Matter of Newcomb* (N. Y. L. J., Feb. 26, 1937, p. 984, col. 4) directed the credit of the discount to principal and seemed to indicate that such was the inflexible rule. But in view of the later expression by the same Surrogate in *Matter of Abrahams* (*supra*), we must assume that circumstances revealed in the record rather than any general rule dictated the result in the *Newcomb* case.

Thus though we find different rulings, it appears that in each case the apportionment of the discount depended upon the equities in that individual case. In the pending case, it appears that income was charged with its equitable share of the interest on the Federal estate tax. The theory was that income earned on assets after the time when such assets should have been committed to meet the tax obligations, should to that extent be applied to offset the penalty for delayed payment. The same principle would seem to require that where income is deprived of earnings by premature dedication of assets to tax obligations, income should share in the premium for such advance. Under the circumstances, the court holds that allocation of the discount to income was proper, and the objection of the special guardian is overruled.

It should be noted that while Schedule C and A-2 of the account treat the discount as a credit to residuary income, the apportionment in Schedule J, in effect, prorates it among the estate and the nontestamentary benefits and is thus inconsistent with the actual allocation of it to the income of the residuary estate. Such apportionment should be corrected.

(3) A speedboat owned by the testator was delivered by the executors to the widow on the theory that it was embraced within the second paragraph of the will. That transaction is the subject of objection by the special guardian and by one of the daughters of the testator. Insofar as material, paragraph second reads: "I give and bequeath to my wife, CLARA MAE RUTH, if she shall survive me, all my household furniture, automobiles with the appurtenances thereto, paintings, works of art, books, china, glassware, silverware, linens, household furnishings and equipment of any kind, clothing, jewelry, articles of personal wear and adornment and personal effects, excepting however, souvenirs, mementoes, pictures, scrap-books, manuscripts, letters, athletic equipment and other personal property pertaining to baseball."

Obviously a speedboat could come, if at all, only within the term, "household furnishings and equipment of any kind", or the term, "personal effects". No other term used in that paragraph could reasonably be said to include such an item. The words "household effects" have been held to be broad enough to include motorboats and motor vehicles (*Matter of Winburn,* 139 Misc. 5, 12; *Matter of Ginnever,* 69 N. Y. S. 2d 452, 460). In such case, however, the test is "whether the articles are or are not used in or by the household, or for the benefit or comfort of the family." (*Matter of Winburn, supra.*) There is no evidence in this record as to any use of the boat by or for the family, or any use in connection with any residence or household. Such evidence as there is indicates that the boat had not been in use for a period prior to the testator's death. The place where it was stored does not indicate any connection with any family abode. Nothing in the text of the will or in the surrounding circumstances would justify inclusion of the boat within the term "household furnishings and equipment."

The term, "personal effects", has often been the subject of judicial construction (see "The Meaning of the Term 'Personal Effects' in a Will", N. Y. L. J., Sept. 13, 14, 15, 1949, editorial pages). Its meaning varies with its context. Here the term immediately follows the words "articles of personal wear and adornment." As the words are used in the above-quoted text, it seems to the court that here the word "personal" limits the word "effects" to the extent that the whole term refers only to property having an intimate relation to the person of the testator.

To justify the interpretation that the term "personal effects" includes a motorboat, the executors must read it as intended

to include *all* personal property. That such was not the intent of the testator is obvious from his specification of so many articles of personalty that were not deemed by him to be within the term "personal effects."

It is suggested that the speedboat is the only article of tangible personal property not specifically bequeathed and that the testator undoubtedly intended it to pass with all the other tangible personalty. Perhaps he did. Perhaps, because not used in recent years, he forgot about it. Perhaps he remembered, but deemed it of so little possible use to his wife, that he was content to have it pass with the residue. A finding of his intention would be based upon mere guess. The will itself contains no expression of his purpose in respect of it. The article cannot fairly be said to come within the second paragraph of the will. The objections to this item of the account are sustained.

This ruling makes academic the objections to disbursements relating to the boat.

The compensation of the attorneys for the executors has been fixed.

Submit decree on notice construing the will and settling the account accordingly.