IN RE ESTATE OF MILDRED M. WEBER, DECEASED.
SARAH M. BENNETT ET AL., APPELLANTS, V. BLUE MOUND
CEMETERY ASSOCIATION, A CORPORATION, ET AL., APPELLEES.

77 N. W. 2d 158

Filed May 18, 1956.   No. 33929.

*Paul H. Bek* and *Wagner, Wagner & Robak,* for appellants.

*Ginsburg & Ginsburg, Russell A. Souchek,* and *Ivan A. Blevens,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This case in the trial court presented multiple issues.

On appeal here it presents basically the question as to whether dollar proceeds of building and loan stock are to be distributed under the terms of a will or as intestate property distributable to the heirs of a deceased person.

The trial court, in effect, held that the money was the property of the estate, distributable under the residuary clause of the will. We affirm that judgment.

Mildred M. Weber, on October 14, 1947, made her will. She will be referred to hereinafter as the testatrix.

Paragraph Fourth of the will provided: "I am not unmindful of the fact that I have a sister, Sarah M. Bennett; two nieces, Phydella W. Belford, and Barbara Carr; and two nephews, Lawrence G. Weber and Byron T. Weber, the last above four named being children of my deceased brother, Otto, but it is my wish that they have and receive nothing from my estate." The parties named in this provision are the claimants in this case. They will be referred to herein as plaintiffs.

Paragraph Sixth of the will provided: "My personal property, money or credits remaining on hand after the payment of the charges herein enumerated, and the settlement of my estate, I hereby give and bequeath unto the Blue Mound Cemetery of Milford, Nebraska, to be held by them in trust, the income therefrom to be used annually and seasonably for the maintenance of my grave and those of my brother and sister, father and mother, located in said cemetery, said income in addition to be used for maintenance, I enjoin on them to place flowers upon our grave, particularly on decoration day." The Blue Mound Cemetery of Milford, Nebraska, will hereinafter be referred to as the cemetery.

During testatrix's lifetime, $25 had been deposited with the cemetery to be placed in the perpetual maintenance fund applicable to one of these graves. Also $50 for said fund had been paid as a part of the purchase price of a lot in the cemetery. The annual income from

these two deposits was about $2.25. It was insufficient to provide adequate care of the graves.

Subsequent to the making of the will, testatrix received by inheritance from a brother a deposit in excess of $5,000 in a building and loan association in Lincoln, Nebraska. In May 1949 this deposit was withdrawn and $5,000 redeposited to the account of testatrix. We will refer to this deposit as the building and loan money.

For many years Charles F. Barth of Seward, Nebraska, had been the trusted friend and confidential and legal adviser of testatrix and represented her in all such matters.

Testatrix was a woman of strong will. Several times prior to February 1950 she offered to and insisted on giving the building and loan money to Mr. Barth as a gift. He refused to so receive it.

On February 3, 1950, testatrix signed a letter to the building and loan association directing them to change this account to "Mildred Weber or Chas. F. Barth as joint depositors and owners and to the survivor thereof." She recited that the "pass book" was enclosed to permit compliance.

It does not appear who suggested this form and condition of the change of the payees of this money. It does appear that Mr. Barth participated in it and his wife signed the letter as a witness. There is no contention here that there was any overreaching or influence exerted on testatrix by Mr. Barth. Such a conclusion is negatived by the evidence. Rather it may be concluded that Mr. Barth assented to the repeated requests of his client and friend that he accept this money.

Also on February 3, 1950, the building and loan association issued a new certificate to "Mildred M. Weber and Chas. F. Barth, as joint tenants or either or survivor." The amount shown deposited was $5,125.77.

On the day that this transfer was made, testatrix advised a trusted friend of what she had done; that if she needed the money she could use it; but that after

her death Mr. Barth would pay her bills and hospital, doctor, and funeral expenses, and that whatever was left was to go to the cemetery.

About that same time she told other friends of what she had done with the building and loan money; and that if she needed it for any purpose during her lifetime, it was hers, but that after her death it was to be Mr. Barth's property.

It does not appear that any part of the money was withdrawn during testatrix's lifetime. She died June 25, 1952. Thereafter Mr. Barth was paid $141.38 as interest and dividends on the building and loan money. Mr. Barth was nominated by testatrix as executor of the will. He offered it for probate on June 30, 1952.

Thereafter certain of testatrix's heirs-at-law contested the will. It appears that this contest was withdrawn as a result of a substantial payment made by a devisee of land under the will. The will was admitted to probate.

Mr. Barth declined to serve as executor and Mr. Russell M. Struthers, an attorney of Seward, Nebraska, was appointed as administrator with the will annexed. We will herein refer to him as the administrator.

Mr. Blevens, Mr. Barth's law partner, was employed as attorney for the administrator.

During the course of these proceedings this transaction of the testatrix and Mr. Barth became a matter of community discussion. It was embarrassing to Mr. Blevens, not only in his service as attorney for the administrator, but in his law practice. Mr. Barth was seriously ill. It caused worry to him. He felt that he had done nothing wrong. Representatives of the cemetery discussed the matter with the attorney for the administrator and took the position that the building and loan money should be recovered for the benefit of the estate and the cemetery's benefit under the residuary clause. The administrator and Mr. Blevens discussed the matter on several occasions. Mr. Blevens felt that it was impossible for Mr. Barth to keep this money.

Mr. Blevens discussed the matter on a number of occasions with Mr. Barth, both as his partner and as representative of the administrator.

Mr. Blevens undertook to withdraw as the representative of the administrator as to this question or, if need be, generally. Mr. Barth secured the advice of other counsel. Obviously they considered the strict rules of law that apply to a transaction of this kind between lawyer and client.

In May 1953, the time came for the filing of an inventory by the administrator. Mr. Blevens was preparing it. He then went to Mr. Barth and insisted that he act in the matter. Mr. Barth then signed a certificate of transfer in blank on the passbook representing this account. At his direction, Mr. Blevens delivered it to the administrator. Later the administrator received the money and accounted for it as assets of the estate. At the same time Mr. Barth paid to Mr. Blevens the amount he had received in dividends and it too was delivered to the administrator by Mr. Blevens and included in his account. Mr. Barth died in September 1953.

It appears that all claims against the estate were paid and, in addition to the money here involved, there are several hundred dollars in the hands of the administrator.

The plaintiffs, in county court and in district court proceedings, claimed that the funds were intestate funds and passed to them as heirs-at-law.

Plaintiffs argue here that the transaction with Mr. Barth and testatrix was one which vested title as a joint tenant in Mr. Barth when made and that upon the death of testatrix that title became vested in Mr. Barth unconditionally as sole owner. On that foundation plaintiffs argue that when the building and loan money was transferred to Mr. Barth there was an ademption of the residuary bequest to the cemetery and that that provision was then revoked by operation of law. They then argue that when the money was later paid by Mr. Barth

to the administrator it became an asset of the estate undisposed of by the will, and hence was intestate property that passes to them by operation of law. We find no merit in this contention.

Plaintiffs would use the claimed ademption not to satisfy but to defeat the very purpose of the testatrix in the residuary bequest.

The plaintiffs in this argument ignore the obvious fact that the validity of the transfer to Mr. Barth of the building and loan money was challenged by the administrator and, by negotiation, the money was recovered by the estate as funds which at all times had properly belonged to the estate. As far as the estate is concerned, the funds stand as though the transfer to Mr. Barth and the retransfer to the estate had never occurred.

If, as plaintiffs contend, the gift to Mr. Barth was complete, then it would seem that this money belongs to the estate of Mr. Barth. We are advised of no rule of law that would permit the plaintiffs to successfully assert title to it under those circumstances. The title, if any, of Mr. Barth to this property is not an issue here. He effectively removed and determined that question.

Here the corpus of the gift was received by the donee, the validity of the gift was challenged, and it was returned to the estate of the donor. It became a part of the assets of the estate distributable under the will.

Section 30-203, R. R. S. 1943, provides: "Any estate, right, or interest acquired by the testator after the making of his will shall pass thereby in like manner as if possessed at the time of making the will, if such shall manifestly appear by the will to have been the intention of the testator."

A will speaks as of the date of the death of the testator. Tiehen v. Hebenstreit, 152 Neb. 753, 42 N. W. 2d 802.

As of the date of her death, testatrix bequeathed personal property, money, or credits remaining on hand to the cemetery under the terms and conditions set out.

It is manifest that this includes after-acquired property.

In In re Estate of Creighton, 91 Neb. 654, 136 N. W. 1001, Ann. Cas. 1913D 128, we held: "A will which makes defined bequests and devises to individuals and persons named, and contains a general residuary clause, will, as against collateral heirs, be held to dispose of all of the property of the estate, unless the contrary appears from the language of the will itself."

The rule is applicable here. Not only does a contrary intent not appear "from the language of the will itself," but here the testatrix specifically provided that these plaintiffs should "receive nothing from my estate."

In In re Verchot's Estate, 4 Wash. 2d 574, 104 P. 2d 490, it was held: "The residuary clause of a will is just as much a part of the will as any other provision contained therein, and a disposition of the property to which it applies is just as effective as a disposition pursuant to any other provision. * * *

"The test of power of disposition by a residuary clause is whether the property belonged to the testator, and not whether the testator knew that the property was his. The legal effect of such a clause is to cover everything capable of being passed by will which is not otherwise well disposed of, and includes such property as the testator may have forgotten or overlooked, or to which he may not have known that he had title." See, also, 57 Am. Jur., Wills, § 1415, p. 946; 69 C. J., Wills, § 1477, p. 421; In re Ingham's Estate, 315 Pa. 293, 172 A. 662, 93 A. L. R. 510.

The trial court correctly decreed that the building and loan money involved herein was properly a part of the assets of the estate of the testatrix and is required to be paid as a part of the residue disposed of by the residuary provision of the will.

Other provisions of the decree are not challenged here.

The judgment of the trial court is affirmed.

AFFIRMED.