Joseph A. Cox, S.
Objections to the account of the executors have been filed by several beneficiaries. Some of the objections require a construction of the will. In addition, the accounting executors ask a construction of the second and third paragraphs of the will and a determination of the persons entitled to certain personal property.
*227 (1) In the third paragraph of the will the testatrix bequeathed to a friend “ all [her] furs and jewelry, both costume and precious ’ \ The executors state in their account that the testatrix owned a diamond ring and a gold fountain pen which were listed among numerous articles insured against loss or theft. The executors were not able to find either article after diligent search, and they filed a claim and proof of loss with the insurer. The articles were valued in the sum of $4,995, and that sum was paid to the executors by the insurer. The money is claimed by the specific legatee of the jewelry. It is also demanded by two of the residuary legatees as property not otherwise disposed of by the will. The executors ask instructions in respect of the distribution of the sum of $4,995.
The parties were afforded full opportunity to produce proof relating to the loss of the diamond ring and the fountain pen. No evidence has been placed in the record which would tend to indicate whether the jewelry was lost or stolen during the lifetime of the testatrix or after her death. The will was executed on July 8, 1955. The testatrix died on May 21, 1956. It is stated by the executors, although not established in the record, that the testatrix was in a hospital for some time prior to her death. There is not the slightest evidence that the testatrix knew of the disappearance of either article. Tn marshalling the assets of the estate, the executors discovered the insurance policy which listed each item of jewelry. A search was made for all articles listed, but no trace of the ring or the pen could be discovered. The executors thereupon filed proof of loss with the insurer. The proof states that the items “ were discovered missing ” on June 21, 1956. This date was subsequent to the death of the testatrix, but the executors do not pretend that the articles were mislaid or mysteriously disappeared on that date. Insofar as this record shows, the stated date merely represents the day when the search of the executors for the articles was concluded.
In the proof of loss the executors “ agree that in the event any of the property for which claim is made hereunder is at any time recovered that it will be immediately delivered to said Company or the value thereof refunded to the Company ’ ’. In the proof of loss the executors also agreed “ that upon payment hereunder and in consideration thereof, i/we hereby assign to the insurance company herein named, all my/our right, title and interest in the articles claimed for, and subrogate to said company any claim i/we may have against any third party, arising out of the loss of said articles, with power to enter *228 suit in my name, and i/we pledge assistance in the prosecution of said subrogation proceedings.”
Before adverting to the argument of the contending legatees, it is necessary to call to mind certain fundamental principles relating to the transactions reported in the account.
The diamond ring unquestionably passes under the bequest of “ all * * * jewelry, both costume and precious ”, and falls within the classification of a specific legacy. The executors under the will of the testatrix take ‘ ‘ the unqualified legal title of all personalty not specifically bequeathed, and a qualified legal title to that which is so bequeathed. * * * As to the chattels and choses in action specifically bequeathed, an executor has but a qualified title, the right to apply them in discharge of debts after first exhausting all other property applicable to that purpose. If he assents to their delivery to the legatees they acquire a perfect legal title to the article or demand, and in case the remaining property of the testator is insufficient to pay his debts the recipients of the specific legacies are liable under the statute to pay the amount or value of the legacies received by them.” (Blood v. Kane, 130 N. Y. 514, 517.) It has been said that the title of the specific legatee ‘ ‘ is inchoate until assent to the legacy is given by the executor, and when such assent is given it is separated from the assets of the estate and ceases to be part of them and the inchoate title of the legatee is perfected.” (Matter of Van Houten, 18 App. Div. 301, 304.) If the assets of the estate are more than sufficient to satisfy all claims and expenses, the executor is under no obligation to reduce the subject matter of the specific legacy to possession or to deliver it to the legatees. (Matter of Utica Trust & Deposit Co., 148 App. Div. 525; Matter of Columbia Trust Co., 186 App. Div. 377, 380.) His mere assent to title is sufficient to perfect the legatee’s rights. (Matter of Strasenburgh, 136 Misc. 91, 93.) The legatee must take the property “ as and where it is ” (Matter of Columbia Trust Co., supra, p. 381) and the legatee may in his own name maintain an action to recover possession of it (Matter of Utica Trust & Deposit Co., supra). Once the executor has given his assent to the specific legacy, it vests the interest at law irrevocably in the specific legatee, and thereafter the specific legatee is a necessary party to any action which affects his right to or interest in the property. (Onondaga Trust & Deposit Co. v. Price, 87 N. Y. 542, 548.) The executor does not thereafter act for or on behalf of the specific legatee with respect to the property. He would have “ no power to represent her in disposing of [the property] by transfer, or by recovering the value thereof in trover” (Onondaga Trust & *229 Deposit Co. v. Price, supra, p. 549). He would have no right to institute any action to recover the property (Onondaga Trust & Deposit Co. v. Price, supra), and he could not, therefore, authorize anyone else to “ enter suit in [his] name ” to recover the property or its value.
The assent of the executor or executors cannot be unreasonably withheld. ‘ ‘ Where an estate is clearly solvent and property specifically bequeathed is thus free from any claim for funeral and administration expenses and the debts of the decedent, there is no justification for a retention of such property. Title to the specific legacy vests in the legatee on the death of the testatrix. * * * An instrument of conveyance or assignment from the executors to the specific legatees may be convenient to evidence the title of the transferees. It is not absolutely necessary since the will itself is the source of their title. ’ ’ (Matter of Rosenfeld, 180 Misc. 452, 453 [Foley, S.].) The executor does not have any discretion to deliver the specific item or its proceeds or something comparable. The legatee is entitled to “ the property specifically bequeathed in kind.” (London v. Goodman, 6 Misc 2d 277, 282.)
In the case now before the court, the will bequeaths the diamond ring to the named friend of the testatrix. The executors made diligent search for the article, but they were unable to find it or to ascertain when and under what circumstances it disappeared. The executors were not under any obligation to take affirmative steps to recover possession of the property or to make physical delivery of it to the specific legatee. There can be no doubt, on the basis of the accounting of the executors, that the solvency of this estate was never in doubt. Moreover, the will states that the bequests in paragraph third are to be satisfied without deduction for any Federal or State inheritance taxes, and hence there was no need to reserve any property to meet tax obligations. The executors, therefore, could have assented to the right of the legatee to the ring “at any time in [their] discretion”. (Surrogate’s Ct. Act, § 218.)
However, the executors proceeded to recover from the insurer the stated value of the items. No one has criticized them for so doing. The insurance policy is not in evidence, and we do not, therefore, know whether the policy protected the successor in interest of the named insured or whether it was only for the benefit of the decedent. That question is, however, of no immediate concern because the fact is that the insurance company has paid the money to the executors and the executors received it for the benefit of the persons entitled thereto. The executors *230 could in such case be regarded as making the claim as trustees for the benefit of the person to whom the property belongs. (Wyman v. Wyman, 26 N. Y. 253, 258.) As the Court of Appeals said in the case last cited: “ This, however, is not an action to recover on a policy for a loss; nor is the question between the insurance companies and these parties, or either of them. The companies have indeed, as far as it lay with them, waived any condition in the policies, or any objection to the payment of the loss. * * * The present is an equitable action to ascertain and determine [the rights of the parties] ” (p. 255).
It is conceded that if the diamond ring had been in the possession of the decedent at the time of her death, title to the ring would have vested in the specific legatee immediately, subject only to the right of the executors to resort to the property if the estate had not been solvent. The executors would have been trustees of the policy of insurance for the legatee. (Durrant v. Friend, 5 De G. & Sm. 343, 64 Eng. Rep. 1145.) If the ring were lost or stolen after the death of the testatrix, it is undisputed that the only person having any right to the ring and the only person having any right to transfer title to the ring would be the specific legatee.
The court is of the opinion that even if the ring had been stolen or misplaced in the period prior to the death of the testatrix, the only person that can effectively transfer title to the ring after the death of the testatrix is the specific legatee. If the property had been taken by theft, certainly the thief would take no title as against either the testatrix or her specific legatee. The legatee takes the subject of the legacy “.as and where it is” (Matter of Columbia Trust Co., supra), and she would be obliged to pursue the person in possession in order to recover the property. Once the executors assent to her possession, the executors would have no right to bring an action to recover the property or to defend title to the property in an action by a third party. If, on the other hand, the ring were mislaid or lost during the lifetime of the testatrix, neither she nor her legatee would lose title or ownership. One who finds the ring is subject to the provisions of law for reporting the article. (See Cohen v. Manufacturers Safe Deposit Co., 297 N. Y. 266, 271-272.) The finder would not acquire good title as against the testatrix or her specific legatee. (New York & Harlem R. R. Co. v. Haws, 56 N. Y. 175, 179; 36 C. J. S., Finding Lost Goods, p. 771, § 3.) The testatrix can effectively pass title to the ring, and the specific legatee becomes the owner of it, taking it in the condition in which it is and with all the difficulties attendant upon obtaining possession of it.
*231 What the future might hold for a specific legatee of a lost or stolen article cannot be foretold. What is clear and certain, however, is that the legatee and not the executors is vested with ownership, and that the legatee alone has the right to transfer ownership and to maintain or defend actions involving it. The executors, without her consent, have no right to transfer ownership to the insurer, to agree to delivery of the property to the insurer if it is recovered, or to subrogate the insurer to any claim against any third party arising out of the loss of the article. The executors may so agree only with the consent and concurrence of the specific legatee. The specific legatee in this case has acquiesced in the action of the executors in collecting the proceeds, but she does so only on the theory that the executors act as her representative and that the proceeds collected by them belong to her.
The residuary legatees seek to draw a distinction between the article bequeathed and the insurance contract which, they argue, is a chose in action which passes to the executors as general assets. It is impossible, however, to draw any distinction between the article and the insurance because the insurer would not be obligated to pay the full value of the article without obtaining an assignment of title, a binding commitment to deliver the article if found, and assistance in its recovery. No one could transfer the title or agree to the delivery of the article except the person having title to the article. The only person having the right to transfer ownership is the specific legatee.
Objection might be made that in this case the executors did not in fact assent to the legatee’s rights to the ring and they executed no formal transfer to her. The executors took no affirmative action in that direction because they apparently conceived it to be their duty to recover the value of the assets and they were in some doubt as to the person entitled to the proceeds. In taking such steps they intended to act only in accordance with governing principles of law and the rights of the parties. Under the circumstances of this case they had no right to refuse to assent to the specific legatee’s title and rights to the ring, and they must be assumed to have done that which the law says they must do.
It is apparent, therefore, that the residuary legatees have no right or interest in the proceeds of the diamond ring. Either the executors acted on behalf of the specific legatee and collected the proceeds as trustees for her benefit, or they wrongfully disposed of her property and are responsible to her for its value. The value of a misplaced article may be something substantially *232 less than the value of the same article in the hands of the parties. Here, however, there is no question of value because the executors hold a sum which represents the property which they transferred. The sum of $4,920 which they hold as proceeds of the diamond ring, therefore, belongs to the specific legatee.
Other eases disposing of the proceeds of insurance on property specifically bequeathed involve different considerations. (See cases cited in 35 A. L. R. 2d 1056-1059.) When property is completely destroyed, as in the case of destruction by fire or shipwreck, there is nothing to which the legatee can take title. The property has been destroyed. In cases where the property has been substantially damaged, the specific legatee takes the property in the condition in which he finds it. (Cf. Matter of MacDonald, 133 Cal. App. 2d 43, and Matter of Barry, 208 Okla. 8.) In the pending case, however, it is clear that the ring was stolen or that it has been mislaid. In either case its recovery with value unimpaired is a distinct possibility. It is that possibility which leads the insurer to insist upon transfer of ownership as a condition to payment. If it is to be assigned or transferred, she alone may accomplish it.
It seems to the court that a fountain pen cannot reasonably be classed as “ jewelry ”, either costume or precious. It is not an article of adornment. It is an article made for a particular use. The court holds that it does not pass under the third paragraph of the will.
The mother of the testatrix, as specific legatee of “ household furniture, furnishings and other household effects ” argues that if a gift of the fountain pen does not adeem by reason of its disappearance, it would pass under the gift to her and not under the gift of jewelry. In other words, she would classify the fountain pen as “household effects” rather than as “jewelry ”, and she claims the proceeds. A fountain pen would more readily be classified as a personal effect of the decedent. There is no evidence in the record to show where it was kept or used. There is no evidence at all respecting it. Under the circumstances, the court holds that the fountain pen cannot, on this record, be regarded as jewelry or household effects. The proceeds pass under the residuary clause.
(2) In paragraph second of her will the testatrix made the following bequest: “ I give and bequeath to my mother, Mary Robinson * * * all my books, household furniture, furnishings and other household effects, and the sum of Twenty Thousand Dollars ($20,000) ’ ’. The husband of the testatrix was an author, using the pen name S. S. Van Dine. The executors report that the testatrix kept in file cabinets in a closet in her *233 apartment, certain manuscripts and notebooks of her deceased husband, copies of letters sent to or by him, and other papers that originally belonged to him. The mother claims that these manuscripts, notebooks and papers belong to her as the intended recipient of the decedent’s books and household effects. The court holds that these articles cannot fairly be regarded as books or as household effects. Insofar as this record shows, they were not bound in regular book form, they were not kept in the library with the books, they were not treated or used as books. The testatrix obviously used the term “ my books ” in its ordinary sense. There is no basis in this record to justify the finding that these papers were regarded by the testatrix as books or were intended to be included within a gift of books. Under no reasonable theory can they be regarded as household effects. They constitute general assets of the estate, and pass under the residuary clause.
The executors also ask instructions in respect of a “ bound manuscript of ‘ The Scarab Murder Case ’, in the handwriting of the decedent’s late husband ”. They report that this bound manuscript ‘ ‘ was physically located in the bookcase in the living room of the decedent’s apartment.” Manuscripts bound in a volume such as this one was, have been held to pass under a bequest of “ books (Willis v. Curtois, 1 Beav. 189, 48 Eng. Rep. 911; Matter of Tomline's Will Trusts, [1931] 1 Ch. 521; Matter of Plowden, 24 T. L. R. 883; 3 Page, Wills, § 968.) The circumstances of each particular case must, of course, be considered. However, Mr. Justice Maugham, in the Tomline case (p. 528), applied a practical rule to a somewhat similar situation, where he said that the factors leading him to his decision were these: “ The volumes are in book form; to the outward eye they look like books, and in the ordinary course they can be, and are, handled like books. Next, I observe that they can be used like books ”. The evidence in the present record indicates that the bound volume was used by the testatrix as a book, was kept with her books and must have been intended to pass under the gift of books. The court holds that this bound volume passes under the second paragraph of the' will.
(3) The final question raised by the executors relates to a camera and a pair of binoculars which the mother of the testatrix claims as “household effects”. The term “household goods ” has been defined to include “ everything about the house that is usually held and enjoyed therewith and that tends to the comfort and accommodation of the household. It depends upon the testator’s use of articles or effects. If by his use he has made them part of his household effects, they are such.” *234 (Matter of Winburn, 139 Misc. 5, 10.) The words “ household effects ” have sometimes been given a broad meaning. (Matter of Ruth, 206 Misc. 423, 429; Matter of Mitchell, 38 N. Y. S. 2d 673, 674.) The test in each case must be whether the articles are used in or by the household or for the benefit or comfort of the family. There is nothing in this record to justify the finding that either of these articles were for use in or about the household or for the comfort and enjoyment of the family. The testatrix did not bequeath her personal effects under paragraph second. These items cannot fairly be said to pass under the gift of household effects, at least insofar as this record shows, and they are distributable under the residuary clause of the will.
(4) Mary Robinson, the mother of the testatrix, is one of the residuary legatees, being entitled to half of the residue in addition to her specific legacies. She has filed numerous objections to the executors’ account.
The first, second, and sixth objections will be withdrawn pursuant to the terms of a written stipulation, provided the account is amended as specified in the stipulation. The seventh, eighth, ninth, twelfth, thirteenth, and fourteenth objections are withdrawn. The fifteenth objection is withdrawn except in respect of the items' of property involved in the construction of the will. The eighteenth objection merely sets forth the objoctant’s position on the questions of construction raised by the executors and requires no separate ruling. The nineteenth, twentieth and twenty-first objections are general and by way of summary. They present no specific objection and require no ruling.
The third objection is to the failure of the executors to deposit all estate funds in savings banks and to obtain the same interest on all estate assets that would have been earned if all assets were deposited in savings banks. Letters testamentary wore issued on June 4,1956. The objections state that in the first two months or more of the administration, the executors held slightly more than $200,000 in an ordinary commercial bank account, and that after investing almost $150,000 on August 9, 1956, the executors held varying sums on deposit in non-interest-bearing accounts. Her own figures show that the executors were required to make substantial disbursements from the estate account during the first 8 months of administration and that within 13 months after issuance of letters, the account contained only a relatively small sum.
It is true that fiduciaries may not permit funds in their possession to lie fallow, but their obligation to make the funds productive arises only “if [the funds] are not required for the payment of claims or expenses and are not necessary for *235 distribution within a reasonably short time (Matter of D'Espinay-Durtal, 4 A D 2d 141, 142.) Here, however, the account of these executors shows an effort to administer and distribute the assets promptly. All known claims and administration expenses appear to have been paid. Schedule F shows distributions of $153,643 to legatees, and while it does not record the times of payment, it seems to be undisputed that this amount was paid within the first year. The executors state that these distributions represent approximately 95% of the legacies. They also state that of this total, sums aggregating $120,000 were paid six days after the expiration of the seven-month period. The objeetant’s own figures indicate a substantial distribution during the eighth month. The executors’ duty was to distribute the funds as promptly as conditions would permit. They have done so. The prompt distribution of the funds required the executors to keep the funds available for disbursement. They would not be readily available if scattered among numerous savings banks. The funds were required for payment of claims and expenses within a reasonably short time. The third objection is overruled.
The fourth and fifth objections are directed to the investment of large sums in United States Treasury notes instead of in savings bank deposits. These objections are overruled.
The tenth objection is to the action of one of the executors in taking $2,000 on account of commissions without allowance by the court. The executors concede that the objection should be sustained. There is no justification for an executor to take any part of his commissions prior to allowance by the court. The executrix will be surcharged with interest at the rate of 6% from the date she withdrew the sum until the date of the decree in this proceeding, or if the money is refunded, then until the date of such refund. (Matter of Young, 156 Misc. 795, 800; Matter of Bates, 167 Misc. 641, 653; Freeman v. Freeman, 4 Redf. 211, 215.) A direction to refund the sum taken would be made except for the fact that commissions in excess of that sum will be payable to her. (Matter of Bates, supra.)
The executors suggest that the surcharge be limited to the proportionate share of the objecting legatee. In Matter of Mette (273 App. Div. 740, affd. 298 N. Y. 789) the court required a refund of the excess over the sum which was held to be a reasonable attorney’s fee, and it refused to limit the refund to the shares of objecting parties. The court recognized the general rule that a surcharge is limited to the damages suffered by the objecting beneficiaries. It. held, however, that this rule has no application where a refund of an excessive fee is directed *236 under section 231-a of the Surrogate’s Court Act, because that section explicitly empowers the Surrogate to direct refund of the excess, and that means, said the court, ‘ ‘ the entire excess, and not merely the part thereof represented by the objecting interests.” (273 App. Div. 741.) The reasoning of that decision requires the same ruling with respect to an unauthorized taking of commissions. Section 285 of the Surrogate’s Court Act permits payment of commissions by an executor to himself individually only when the Surrogate expressly allows such commissions in his decree. Executors who take commissions without awaiting action by the Surrogate or without the express consents of the legatees affected “ must be held, therefore, to have improperly appropriated the funds of the estate to their personal use, and to be chargeable with interest thereon, from the time of such misappropriation to the time of entering the decree ”. (Freeman v. Freeman, supra, p. 215.) Where an executor improperly uses estate funds for his individual purposes, the court must require him to make amends. If it were not for the fact that the decree closing this proceeding will award her a greater sum than she had withdrawn, this court would be under a duty to direct the executrix to restore what she had improperly taken. As the court held in Matter of Mette (supra), the duty to direct refund must extend to the entire amount of estate moneys improperly taken and not merely to that part represented by those who call attention to the misuse of the funds. Interest for the period that the moneys were improperly held, should logically be based upon the amount to be refunded. Under the circumstances of this case the court does not direct antual refund of the sum taken. On the objection of one of the residuary legatees, the court is required to surcharge the executrix with interest on the sum improperly used. To that extent the sum will be deemed to have been refunded and appropriated to the executrix only when actually allowed. The tenth objection is sustained.
The eleventh objection is withdrawn under an agreement with respect to attorneys’ fees.
The sixteenth objection is to the failure of the executors to set forth an allocation of estate taxes. The estate tax returns have not yet been audited. The executors were in doubt as to the persons entitled under the will to several articles of property. The account is not yet in final form. The executors, therefore, were unable to submit a schedule showing the allocation of estate taxes. They intend to do so when the estate finances are definitively settled. The objection therefore is overruled without prejudice.
*237 The seventeenth objection is to the computation of the executors’ commissions. The objectant claims that the objections and the rulings herein may require a recomputation of commissions. All questions of commissions are reserved for determination upon the settlement of the decree. No further ruling is required on this objection.
(5) The objections of Helen W. Ershine relate to the construction of the will with respect to the diamond ring and the fountain pen. Paragraphs 2, 3, 4 and 5 are merely allegations in support of her contention that the items were bequeathed to her. The first paragraph objects to the computation of commissions in that no commissions should be allowed on the sum received from the insurance company because it represents a specific legacy. The court will reserve its ruling upon this question for determination upon the settlement of the decree.
(6) Lena Davis, one of the residuary legatees, has filed objections to the account. The first objection relates to the attorneys’ fees and is withdrawn upon the terms and conditions of the agreement of settlement. The second objection relates to the questions of construction and requires no separate ruling. The third objection is general and by way of summary and requires no ruling.
(7) The accounting executors request the court to fix the compensation of their attorneys in the aggregate sum of $15,000. Two of the residuary legatees who have appeared herein have agreed in open court to the fixation of the attorneys’ fees in the aggregate sum of $8,750. The court finds the sum reasonable and will direct payment of that sum to the attorneys for both executors.
As soon as the estate taxes have been definitively fixed, the account should be brought down to date and made final.
Submit decree on notice settling the account accordingly.