Ruth E. RITZ, H.L. Ritz, Esther A. Beck, Phillip O. Ritz, Inez E. Holland, Russell Ritz, Raymond H. Ritz, Richard T. Ritz, Randall R. Ritz, and Barry Norlin, Appellants,

v.

SELMA UNITED METHODIST CHURCH, La Vaun Jarr, Chairman of the Board, Appellee.

No. 90–65.

Supreme Court of Iowa.

March 20, 1991.

H. Edwin Detlie, Ottumwa, for appellants.

David P. Miller, Libertyville, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER and LAVORATO, JJ.

CARTER, Justice.

Ruth E. Ritz and several other named plaintiffs appeal from an adverse determination by the court in a declaratory judgment action seeking to adjudicate adverse claims to buried money. Plaintiffs are the beneficiaries and heirs of Charles and Rosa Nelson, husband and wife, and Opal Nelson, the only daughter of Charles and

Rosa. Charles and Rosa, and later Opal, owned a dwelling house and lot in Selma, Iowa. The Nelson family's ownership of this property spanned a period extending from 1922 until Opal's death in 1981.[1]

The property was abandoned by Opal's personal representative at the time of the final settlement of her estate because of substantial unpaid real estate taxes and other clouds on the title. Van Buren County ultimately gained title to the property at a tax sale. The defendant, Selma United Methodist Church (the Church), purchased the property from Van Buren County in 1987.

When the Church razed the house and garage on the property, a substantial sum of paper money and coins was found buried in the ground in tin cans and glass jars. Several silver half-dollars included in this cash hoard antedated 1900. Also included among the money discovered were several twenty-dollar and ten-dollar gold certificates circa 1928. The face amount of the coins and currency totaled $24,547.74.

The Church advertised this finding in accordance with Iowa Code section 644.8 (1989). Thereafter, the plaintiffs made claim to the cash hoard and filed a petition for declaratory judgment, seeking a determination that they were the rightful owners of the money.

Following trial of this claim, the district court found that Charles Nelson was the true owner of the money and had buried it at the location where it was found by the agents of the Church. The court, relying on Iowa Code section 633.488 (1989), concluded, however, that any claims of the plaintiffs to this cash hoard had to be brought within five years of the order of final settlement in Opal Nelson's estate. Because more than five years had transpired between the time of that settlement order and the finding of the money, the court found plaintiffs were barred from asserting ownership. From this premise, the court determined that title to the mon-

ey vested in the Church, as finder, pursuant to section 644.11.

Plaintiffs have appealed. They contend that, as heirs or beneficiaries of the true owner of the money, they have a superior claim against the present owners of the real property where it was found. They further urge that Opal Nelson's estate can be reopened more than five years after final settlement in order to administer this newly discovered property. The Church has cross-appealed, challenging the district court's finding that plaintiffs had established Charles Nelson to be the true owner of the money. Other facts which are pertinent to this appeal are mentioned in our discussion of the legal issues presented.

## I. *Alternative Remedy to Section 644.-12 Determination.*

■ At the outset of our inquiry, we must settle a question involving our jurisdiction to hear this appeal. The Church initiated the statutory notice procedure which has been established for the finders of lost or misplaced property under section 644.8. If this statutory procedure had been carried to a conclusion, culminating in a summary adjudication of ownership under section 644.12, the decision of the district court would have been final. Iowa Code § 644.12 ("there shall be no appeal from the decision"). The latter statute also provides, however, that it "does not bar any other remedy given by law." *Id.* We conclude that a declaratory judgment action under Iowa Rule of Civil Procedure 261 is a sanctioned alternative to a summary adjudication under section 644.12. When a declaratory judgment action is utilized to settle ownership of lost or mislaid property and that action proceeds to a final judgment, this court may review such judgment pursuant to Iowa Rule of Civil Procedure 267.

## II. *Ownership of Lost or Mislaid Property.*

■ The rights of finders of property vary according to the characterization of

---

1. Charles Nelson died in 1945 and Rosa Nelson died in 1968. Opal succeeded to all interest of her parents in their real and personal property.

the property found. In *Goddard v. Winchell*, 86 Iowa 71, 85–86, 52 N.W. 1124, 1125 (1892), this court set out some of the legal principles which apply. The general rule is that the finder of lost property becomes the owner thereof against the whole world other than the true owner. *Id.* at 85, 52 N.W. at 1125. Property is lost when the owner unintentionally and involuntarily parts with its possession and does not know where it is. *Eldridge v. Herman*, 291 N.W.2d 319, 323 (Iowa 1980).

■ Mislaid property is that which the owner has voluntarily placed somewhere and then forgets that it is there. 1 Am. Jur.2d *Abandoned, Lost, and Unclaimed Property* § 2, at 4 (1962) [hereinafter 1 Am.Jur.2d]. The right of possession of mislaid property is in the owner of the premises upon which it is found, as against all persons other than the true owner. *Id.; State ex rel. Scott v. Buzard*, 235 Mo.App. 636, 642, 144 S.W.2d 847, 849 (1940).

■ Property which has become a part of the natural earth is not subject to the general rule of lost or mislaid property. *Goddard*, 86 Iowa at 85, 52 N.W. at 1125. Such property belongs to the owner of the real estate upon which it was found. *Id.* Examples of this type of property are a meteorite, a prehistoric boat, valuable earthenware and gold-bearing quartz. 1 Am.Jur.2d § 4, at 6; *Allred v. Biegel*, 240 Mo.App. 818, 820, 219 S.W.2d 665, 666 (1949); *Burdick v. Chesebrough*, 94 A.D. 532, 537, 88 N.Y.S. 13, 15 (1904).

■ Treasure trove is treated as lost and belongs to the finder as against all except the true owner. *Zornes v. Bowen*, 223 Iowa 1141, 1145, 274 N.W. 877, 879 (1937). Treasure trove consists of coins or paper money which is concealed by the owner; it carries with it the thought of antiquity such that it has been hidden so long that the true owner is not discoverable. *Hill v. Schrunk*, 207 Or. 71, 74, 292 P.2d 141, 143 (1956); 1 Am.Jur.2d § 4, at 6. Abandoned property is that to which the owner has voluntarily relinquished all right, title, and interest with the intention of terminating his ownership. *Id.* § 1, at 3. The finder who reduces abandoned property to possession acquires absolute title as against the former owner. *Id.* § 18, at 18.

Although the real estate was abandoned by Opal's estate, we believe that it would be a completely unwarranted inference to conclude that the money found by the Church had been abandoned by its owner. The fact that it was buried in jars and tin cans indicates that the owner was attempting to preserve it. Likewise, the money did not bear the characteristics of property embedded in the soil. It is fairly to be classified as the type of property to which the true owner retains ownership as against the finder or the owner of the property where it is found.

■ In applying the rules of ownership relating to lost or mislaid property, courts are in general agreement that if the original owner is deceased that person's heirs or legatees are entitled to lay claim to the property. *United States v. Peter*, 178 F.Supp. 854, 856 (E.D.La.1959), *aff'd*, 283 F.2d 696 (5th Cir.1960); *Davison v. Strickland*, 145 Ga.App. 420, 423, 243 S.E.2d 705, 709 (1978); *Baugh v. Williams' Adm'r*, 264 Ky. 167, 171, 94 S.W.2d 330, 332 (1936); *In re Wright's Estate*, 15 Misc.2d 225, 230, 177 N.Y.S.2d 410, 418 (1958); *see also* 1 Am.Jur.2d § 25, at 22.

III. *Whether Plaintiffs' Claims are Barred.*

■ The record indicates that Opal Nelson died testate and unmarried in May of 1981. Her will was admitted to probate. The distributable portion of her estate was bequeathed to specific legatees in stated percentages. The defendant Church was one of these legatees as were several of the plaintiffs.

Although the district court found that Charles Nelson had been the owner of the found money and that his interest therein had passed to Opal, it concluded that plaintiffs were barred from claiming by, through, or under Opal. It based this conclusion on the five-year limitation which section 633.488 places on reopening a final settlement in an estate.

Plaintiffs urge that the time limit fixed in section 633.488 does not preclude reopening Opal's estate to administer newly discovered property. We believe that both section 633.488 and section 633.489 are involved in resolving this issue. These statutes provide, in relevant part, as follows:

### 633.488 Reopening settlement.

Whenever a final report has been approved and a final accounting has been settled in the absence of any person adversely affected and without notice to the person, the hearing on such report and accounting may be reopened at any time within five years from the entry of the order approving the same, upon the application of such person, and, upon a hearing, after such notice as the court may prescribe to be served upon the personal representative and the distributees, the court may require a new accounting, or a redistribution from the distributees....

### 633.489 Reopening administration.

Upon the petition of any interested person, the court may, with such notice as it may prescribe, order an estate reopened if other property be discovered, if any necessary act remains unperformed, or for any other proper cause appearing to the court. It may reappoint the personal representative, or appoint another personal representative, to administer any additional property or to perform other such acts as may be deemed necessary.

As with any issue of statutory interpretation, we begin with the language of the act and go no further if its meaning is clear. *In re Hoppe,* 289 N.W.2d 613, 616 (Iowa 1980); *City of Des Moines v. Elliott,* 267 N.W.2d 44, 45 (Iowa 1978); Iowa Code § 4.1(2) (1989). The five-year limitation on reopening a final settlement contained in section 633.488 is, by its express terms, aimed at an attempt to reopen an estate by an adversely affected person who was not given notice and opportunity to be heard on the final report.[2]

Section 633.488 contemplates a reopening of matters which have been previously considered in the final accounting, distribution, and settlement order. Section 633.489, on the other hand, is aimed at reopening a closed estate for the purpose of administering property omitted from the inventory or performing other necessary acts which were not performed during the original administration. Section 633.489 does not place any time limitation on reopening for such purposes.

■ Based on the district court's finding as to Charles Nelson's ownership and Opal's succession thereto, the bills and coins were property of Opal which were not administered in her estate. This is a circumstance which allows reopening of that estate for purposes of administering these assets and making distribution to her legatees in their proportionate share. These legatees are the rightful owners of the money rather than the finder.[3] This is true even though Opal was not aware of the buried money at the time of her death. *See In re Weber's Estate,* 162 Neb. 636, 642, 77 N.W.2d 158, 162 (1956) (after acquired property passes under will purporting to dispose of all testator's property even though testator was unaware of same); 96 C.J.S. *Wills* § 756, at 155–56 (1957) (same). The district court erred in concluding otherwise.

### IV. *Defendant's Cross–Appeal.*

■ As a final matter, we must consider the Church's attempt to save the judgment on the assertion that the court erred

---

2. Adversely affected persons who have been given notice and opportunity to be heard on the final report are bound by the provisions of the final settlement order to the same extent as any other final judgment. Iowa Code § 633.36. Such persons have a right of appeal and, in addition, may seek vacation or modification of the final order to the extent permitted by Iowa Rule of Civil Procedure 252.

3. It appears in the record that certain of Opal's legatees may be deceased. If such legatees died before the testator, their interest shall be distributed in accordance with § 633.273. If these legatees died after the testator, their interests to Opal's personal property vested upon her death. Iowa Code § 633.350. Consequently, this property shall be distributed as any other personal property in their estates.

in finding Charles Nelson to be the owner of the money. The Church bases this challenge primarily on the fact that an inventory of some of the paper money prepared by members of the Church indicates the issuance date on a few of the bills was later than the time of Charles' death.

Plaintiffs sought at trial to require production of the actual money. The court refused to compel its production and accepted the Church's handwritten inventory as evidence. Because the Church had the opportunity to produce the bills which allegedly were dated after Charles' death and successfully resisted doing so, it is now open to an adverse inference that the actual evidence would have been unfavorable. *See Crosser v. Iowa Dep't of Pub. Safety,* 240 N.W.2d 682, 685 (Iowa 1976). There was sufficient evidence in the record to support the district court's finding that all of the money belonged to Charles.

We further note on this issue that the same circumstances of frugal living, continuous access to the location of the money, and an inclination to hoard cash, which caused the court to find as it did concerning Charles' ownership, would suggest that, if he had not placed the money where it was found, then this was done by Rosa or Opal. Had this been the case, it would not have altered the basis for plaintiffs' claims in any significant way.

We have considered all issues presented and conclude that the judgment of the district court must be reversed. The case is remanded to that court for entry of a new declaratory judgment consistent with our opinion.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.