In the Matter of the Estate of EDWIN P. BURR, Deceased.

Surrogate's Court, Genesee County, April 6, 1938.

*Willis E. Hopkins,* for Edward F. Ostertag, as executor, etc.

*William J. Darch,* for the widow, Hattie Burr, petitioner.

*Albert J. Waterman,* special guardian for infant legatees.

*Stedman & Waterman,* for residuary legatees.

CONE, S. This is a proceeding under section 18, subdivision 7, of the Decedent Estate Law, providing as follows: " An election made under this section shall be in lieu of any right of dower, and must be made within six months from the date of the issuance of letters testamentary * * * and shall be made by serving written notice of such election upon the representative of the estate personally or in such other manner as the surrogate may direct and by filing and recording a copy of such notice with proof of service in the Surrogate's Court where such will was probated. The time to make such election may be enlarged before its expiration by an order of the Surrogate's Court where such will was probated, for a further period of not exceeding six months upon any one application. If a spouse shall default in filing such election within six months after the date of issuance of such letters, such Surrogate's Court may relieve the spouse from such default and authorize the making of such election within a period to be fixed by order, pro-

vided no decree settling the account of the fiduciary has been made and provided further that twelve months have not elapsed since the issuance of letters. Such an application for enlargement of time to elect or for relief from default in electing shall be made upon a petition showing reasonable cause and on notice given to such persons and in such manner as the surrogate may direct."

The petitioner, Hattie Burr, as widow, having defaulted in filing the election within six months from the date of the issuance of letters, to wit, November 24, 1937, now asks that her default be opened to permit her to file an election.

The question presented by the petition herein is contained in the words of that part of the section, as follows: " If a spouse shall default in filing such election within six months after the date of the issuance of such letters, such Surrogate's Court may relieve the spouse from such default and authorize the making of such election within a period to be fixed by order, provided no decree settling the account of the fiduciary has been made and provided further that twelve months have not elapsed since the issuance of letters. Such an application for enlargement of time to elect or for relief from default in electing shall be made upon a petition showing reasonable cause."

It is stipulated upon the hearing herein that no decree settling the account of the fiduciary had been made, and that twelve months had not elapsed since the issuance of letters.

The attorney for the petitioner and the special guardian and the attorneys for the residuary legatees have presented exhaustive briefs discussing the legal phases of the question involved, together with several hypothetical questions and typical cases, that might be suggested within this section, to aid the court in its decision. No reported cases are cited in the briefs, nor has the court discovered that this question, under this section, has been passed upon by the courts since the added amendment of September 1, 1936 (Laws of 1936, chap. 114, above quoted).

Prior to the amendment the question under this section, subdivision 7, including the history of dower right and the right of election by surviving spouse, was fully and ably discussed by Surrogate WINGATE in his opinion and decision in *Matter of Zweig* and *Matter of Lottman* (145 Misc. 839), holding that, in the absence of fraud, this is clearly a Statute of Limitations, and that the application made for the extension of the period to file the right of election, after the expiration of the six months, could and should not be extended, and it is, therefore, unnecessary in this proceeding to review the legal principles so ably presented in the *Zweig* case.

Nevertheless, in *Matter of Hearn* (158 Misc. 370), decided in February, 1936, Surrogate WINGATE did permit the surviving spouse to modify her election following the six months' period, under the facts and circumstances presented by that case. And it is apparent that as a result of the *Hearn* case the amendment of 1936 and subdivision 7 was enacted, as above quoted.

Prior to the amendment the statute permitted the surviving spouse, at any time before the expiration of six months, on petition showing reasonable cause, to have the period extended for not exceeding six months upon any one application.

It is, therefore, apparent that a surviving spouse, at any time before the expiration of the six months' period — be it a month or a week — on reasonable cause shown, could have the time extended for an additional six months' period.

This section 18 of the Decedent Estate Law, in effect September 1, 1930, changed the common-law right of a surviving spouse and was intended to give additional rights of property to a surviving spouse, and provided the method of approach as to how they should be ascertained, in order that, within a limited period, the legatees and the share of the surviving spouse in the estate would become definite and certain as to all parties.

The amendment of September, 1936, was for the purpose of granting further rights under the statute, after the expiration of the six months' period of limitations, without application, thereby permitting a surviving spouse to file an election for additional time on reasonable cause being shown to exercise her right of election.

This application is, therefore, made by Hattie Burr, widow of Edwin P. Burr, to permit her to open a default after the six months' period has elapsed from the date of the issuance of letters testamentary in this estate. Letters testamentary were issued to the executor out of the Surrogate's Court of the county of Genesee on May 24, 1937, and the six months' period to file an election expired on November 24, 1937. The petition of the widow herein was dated December 3, 1937, and was filed in the Genesee county surrogate's office on December 10, 1937. And, pursuant to the provisions of the section, an order to show cause was granted, directed to the representative of the estate and the legatees, to show cause why the default should not be opened.

The infant legatees, through their special guardian, filed a guardian's answer raising the issue of whether reasonable cause had been shown to permit the opening of the petitioner's default in failing to file her notice of election within the six months to take under the statute rather than under the provisions of the testator's will.

One hundred and eighty-five pages of testimony were taken, referring principally to the friendly relationship which had existed between the testator, his relatives and the surviving widow, and her many conversations with the executor and his attorney as to her right to elect, the circumstances surrounding her residence in Florida, as devised to her, and her acceptance of a part of a specific legacy of $1,000 under the will.

It is the contention of the respondent that, the widow having accepted part under the terms of the will — which fact is beyond dispute — she is estopped from claiming otherwise; that it violates the principles of right, justice and fair dealing; and then that she should later repudiate the other provisions of the same instrument that gave her the benefits she has already accepted; and that the petitioner, having been informed of her rights before accepting the benefits, cannot thereafter change her mind; and that the doctrine of equitable estoppel applies, and cites the *Zweig* case, decided under this statute, and other cases, as authority for his contention.

In *Matter of Leger* (147 Misc. 286) the court held that a widow did not waive her rights to receive her intestate share of a husband's estate under section 18 of the Decedent Estate Law by receiving payments pending the probate of the will from a trust created therein for her benefit. And this case would appear, under this section, to settle the question of estoppel. The court in its opinion refers to the case of *Beetson* v. *Stoops* (186 N. Y. 456), cited by the respondent, and states that previous to the enactment of this statute giving liberal rights to a widow, such widow, having accepted benefits, would be estopped from claiming against the will.

The court is impressed with the testimony of the executor, Mr. Ostertag, and his attorney, Mr. Hopkins, as to the conference of September 16, 1937, and as to other meetings with the widow, in which the affairs of this estate were discussed, and believes that they honestly and fairly informed the petitioner that she had a right to elect. I am convinced that their purpose was to ascertain if she was going to file an election so that they would know whether they could safely proceed to settle the estate as provided by the will or whether she was going to take her intestate share.

Whether Mrs. Burr understood what they told her or whether she gained any light from the reading of section 18 of the Decedent Estate Law, as presented to her by Mr. Hopkins, is another question. Few laymen today clearly understand this section, and I doubt if Mrs. Burr really comprehended the meaning from reading a section contained in the book presented to her by Mr. Hopkins. But this is not the issue presented by this petition.

The court is also convinced that Mrs. Burr never knew very much about the financial affairs of her husband during his lifetime. He always provided for her, spent the winters in Florida, the summers in Darien at the home of his brother, and that she really did not know the size of his estate until the newspapers revealed the amount, as appears from the inheritance tax proceeding; and these newspaper clippings, which she presented to the executor, did actually state that her life share was $23,974.70, it being the lump sum value as revealed by the tax proceeding. It was, therefore, natural for her to inquire of the executor as to her share, when these accounts also stated that the estate amounted to about $200,000.

There is also force in the argument that all this estate was acquired by the decedent previous to his marriage to the petitioner, his second wife, and that he should be permitted to direct the final disposition, after caring for his widow. That seems equitable and just, as presented by the facts in this case, and would have been possible prior to the enactment of this statute, in effect on September 1, 1930.

It is unnecessary to discuss this statute, but it was enacted to remedy many unjust situations under the laws which permitted husbands and wives to deprive a surviving spouse of a share in an estate. But the equity or justice of the provisions of the testator's will herein is not the issue presented in this proceeding.

The court has enjoyed the discussion of this case as presented by the briefs, and there are many facts which could be referred to as presented by this case; but this is a proceeding addressed to the question of opening a default, as presented by the section, after the expiration of six months, and the question is:

1. Has the petitioner presented a reasonable cause for failure to file her notice of election within the six months' period?

2. If she has, the default should be opened; if not, the petition should be denied.

This is the one and only issue presented.

The statute does not state the exact time when a surviving spouse shall make up his or her mind, except that it must be done within six months from the date of the issuance of letters; and if they fail but can show reasonable cause for such failure, then the surrogate can relieve the default and authorize the making of such election within a period authorized by order.

From the testimony it could be determined that Mrs. Burr decided not to file her election, and so informed Mr. Hopkins; but that is not conclusive. She could have changed her mind at any time up to and including the close of the day of November 24, 1937, and could have filed her election and no complaint could be addressed to her decision.

Whether the will was fair and just, in the light of the circumstances, is not for the court to determine, and that is not the issue.

Mr. Hopkins testifies that on November 6, 1937, just prior to the time petitioner left for Florida, he asked her, " If she had changed her mind or wished to do anything about the election under the statute and she said ' No, she was going to let things go just as they were.' " The petitioner denies this conversation, but I am impressed that even with Mr. Hopkins there was still a doubt that since the decision and the conference of September 16, 1937, the petitioner might change her mind before November 24, 1937, and file her election; she still had that right. And now, having failed to do so, this statute again comes to the aid of the surviving spouse.

The statute was enacted for the benefit of the surviving spouse, and while it may seem unjust, we cannot complain if a reasonable cause can be shown for the opening of the default.

It appears that the petitioner, after her conversation with Mr. Hopkins, left for Florida, arriving there on or about November 12, 1937, which was twelve days before the expiration of the six months' period on November 24, 1937, during which time she could have decided to file her election. The testimony shows that shortly after her arrival in Florida she received a letter from her son in Chicago, confirming the facts of the size of Mr. Burr's estate. There is, of course, testimony as to the conference with the executor as to the size of the estate, much of which is in dispute. It is apparent that the petitioner, after the publication of the newspaper article as to the size of her husband's estate, corresponded with her son. It then appears that after arriving in Florida her son definitely informed her that the newspaper clippings which she had exhibited to Mr. Ostertag were correct as to the size of the estate. Her testimony then shows that she was ill, and it is not disputed; that she by letter asked her son to look after the filing of her election. November 24, 1937, passed. December 3, 1937, petition herein was verified. The petitioner had decided in Florida, previous to November 24, 1937, to file an election. She was about 1,500 miles from the Genesee county surrogate's office. There was no delay in presenting the petition.

I am convinced, under the statute and the purpose for which it was enacted, that the petitioner has shown reasonable cause for her default.

The surviving spouse, Hattie Burr, is relieved of her default and the prayer of her petition granted, and she is authorized to make her election, as widow of Edwin P. Burr, on or before July 1, 1938, in the manner provided by the statute.

Order to be entered accordingly by consent or on three days' notice.