Froessel, J.
In this accounting proceeding commenced by the executors under the will of Adrian Bussell Allan, respondents herein, the executor under the will of Allan’s widoiv appeals by permission of the Appellate Division. The courts below have dismissed as insufficient on their face appellant’s objections to the account. These objections challenged the validity of an instrument executed and filed by the widow, Helen H. Allan, which withdrew a prior notice of the exercise of her right of election under section 18 of the Decedent Estate Law.
The value of the widow’s interests under the will totaled $590,890, while the elective share amounted to $1,132,001. The widow and four other residuary legatees, including decedent’s first and divorced wife, Alice W. Allan, and his daughter by said wife, Virginia A. Carter, both respondents herein, were each given a 20% interest in the residue.
The widow served timely notice of the exercise of her right of election, and, pursuant thereto, the executors estimated the extent to which each interest under the will would have to abate to make up for the widow’s additional share. To adjust the distribution of income, they ceased payments to the four other legatees and made distributions to the widow only, continuing this method until June 10, 1955, when she served notice upon them — and filed the instrument with the Surrogate’s Court — that she was withdrawing her notice of election. Thereafter the executors, giving effect to the withdrawal notice, made no payments to the widow in the distribution of June 30, 1955.
Shortly after the commencement of this proceeding, the widow died, and appellant, her executor, was substituted as a party. Appellant thereupon objected to the account insofar as it recognized the validity of the withdrawal notice, on the ground that it was void because filed “ after the expiration of the period during which the notice of the exercise of the right of election might have been filed and without any application having been previously made to this or any other court for leave to 'file the same;” and on the further ground that, even if legally possible under such circumstances, the withdrawal here was nevertheless invalid in that the widow “ did not act voluntarily and of her own free will, but rather as the result of unreasonable pressure, possibly constituting duress, exerted either by Virginia A. Luginbuhl, now Virginia A. Carter, a party to this proceeding, *339 or by other persons whose names are at present unknown to objectant.”
Objections to the account were also filed by Virginia A. Carter and Alice W. Allan, challenging, among other things, the rejection by the executors of Mrs. Carter’s claim for $24,000 for services allegedly rendered to the estate. The basis for this claim may be summarized as follows: that the widow and her late husband’s executors entered into a plan to minimize estate taxes whereby it was agreed that the widow would elect and thereafter redistribute to certain of the residuary legatees, excluding Virginia A. Carter and Alice W. Allan, the additional property received by the election and which, because of the election, qualified for the marital deduction; that the executors made no independent appraisal of the property passing to the widow under the will but accepted the grossly understated valuations furnished to them by the widow; that, having learned of the above plan and of the filing of the notice of election and the consequent abatement of all other beneficiaries’ interests, Virginia A. Carter personally undertook to establish the true value passing to the widow under the will, and “ that as a result of this action on the part of Virginia A. Carter, the late Helen Hyland Allan withdrew her notice of election ”. The sufficiency of this objection is not before us on this appeal but it has a bearing upon the issues which are before us.
We defer for the present the question of the voluntariness of the withdrawal, and turn to the general question of whether a notice of election may be withdrawn at all, and, if so, under what circumstances. As to this issue, the courts below were unanimously agreed that, in the absence of any express limitation in the statute or of any claim that the instant withdrawal prejudiced existing rights, there was no reason to prevent the widow from voluntarily relinquishing the rights derived from her exercise of the election.
Section 18 concededly makes no reference to the question of withdrawal of an election, apparently leaving that to be determined by general principles of law, and is expressly concerned only with the making of an election. Appellant would nevertheless have the court extend the application of subdivision 7 of the section—providing time limitations with respect to elections — to the instant situation. Under this subdivision, the six months ’ *340 time within which to make an election may be enlarged by the Surrogate before the expiration of that period, and may be further enlarged any number of times (at least prior to the final accounting) upon a showing of reasonable cause, provided each application is made before the expiration of the previously extended period (Matter of Baker, 171 Misc. 1022, affd. 258 App. Div. 718; Beechler, Elections Against Wills, pp. 360-361, 395-396, 405-406; Matter of Siegel, 180 Misc. 818, 819; see, also, Matter of Schmidt, 168 Misc. 534, 539). In the case of a default, the application for relief must be made to the Surrogate before the expiration of 12 months from the issuance of letters (provided the final accounting decree has not been made), but the time fixed by the Surrogate for making the election may extend beyond the 12 months’ period (see, e.g., Matter of Burr, 168 Misc. 240, 242, 245, affd. 254 App. Div. 825).
We agree with the Surrogate that the time limitations expressed in section 18 were “ intended to be applicable to wholly different rights ” from the one claimed here. The exercise of an election to take against (or more accurately in addition to the provisions in) the will cuts down the interests of the beneficiaries under the will. The withdrawal of the election increases or restores the interests of these beneficiaries, precisely as the testator directed. Nothing is being taken away from the persons interested in the decedent’s estate. Bather, they are all benefited by the surrender of the widow’s additional share. Thus in this proceeding the beneficiaries seek to uphold the validity of the withdrawal. Surrogate Wingate, a member of the Decedent Estate Commission, which wrote section 18, said of subdivision 7 in Matter of Clark (166 Misc. 909, 913): “ The purpose of this requirement is obvious and is merely to assure timely notice to those charged with the administration of the estate that the surviving spouse is dissatisfied with the terms of the will and asserts the additional right accorded by the statute, thus enabling them to be on their guard against any mode of dealing with the assets in their charge which does not take into consideration the statutory rights-of the elector(Emphasis supplied.)
In Matter of Zweig (145 Misc. 839, 853, 857 [1932]) the widow failed to file her notice of election against the will within the required period, and applied to the Surrogate for relief from *341 the default. In denying the application, Surrogate Wingate analyzed the problem on two alternative theories. The first was to view the application as one for additional time to comply with the requirements of the statute, which he denied — the amendment of subdivision 7 of section 18 authorizing such relief was enacted thereafter (L. 1936, ch. 114). The second was to view the failure to comply as an election to take under the will, and the application as one to revoke this election. The Surrogate held that “ If the matter be now considered in its aspect of an application to reverse an intentional and valid election in favor of the will, the respective widows are in no more favorable position ” than they would be under the first theory (p. 857). In its opinion in the instant case, the Appellate Division stated that Surrogate Wingate in the Zweig case 1 ‘ expressed the view by way of considered and deliberate dicta that an election, once validly made, is generally irrevocable ’ \ (Italics supplied.) It is clear, however, that in the quoted statement the Surrogate was referring to the attempted revocation of an election to take under the will in order to take a larger share against the will, which was the issue in the Zweig case. In the instant case the situation is precisely the reverse; thus the Zweig case has no application whatever.
It is argued that if the procedure followed in this case by the widow—with whom appellant is in privity — be approved by our court, the time limitation of subdivision 7 of section 18 would be nullified. Appellant states that surviving spouses will be advised by their attorneys to file the required notice of election and “ in that way prolong substantially the period during which a choice could be made ”. This argument is not persuasive. If a spouse is permitted to elect in the first place, it is because she chooses to receive a larger share of her husband’s estate thereby. If then she does elect and thus becomes entitled to this greater interest, it is quite unlikely in most cases that she will wish to surrender it. On the other hand, if the spouse has serious and reasonable doubt as to the value of the assets she is to receive under the will and the value of the estate as a whole, and wishes to postpone her decision beyond the six months ’ period, the law expressly provides that she may secure one or more extensions of time (Matter of Baker, supra), and thus defer her final decision.
*342 Appellant also urges that we should follow the ‘ ‘ well accepted rule that an election may not be withdrawn without court approval”. The cases cited by appellant from other jurisdictions are of little value here. As pointed out by both of the courts below, the New York statute is sui generis. Under section 18, unlike the statutes of other jurisdictions (see Combined Reports of Decedent Estate Comm. [1928-1933], pp. 117-140), the surviving spouse may not elect unless the testator gives her less than the statutory requirements (Matter of Byrnes, 141 Misc. 346, 347, 348-349, affd. 235 App. Div. 782, affd. 260 N. Y. 465), and upon election she does not take against the will entirely *, but, as the Appellate Division stated, is merely entitled “ to take the difference between the testate disposition, if any, and the intestate share ”. The consequence of this distinction is that in New York when a surviving spouse withdraws her election she simply surrenders the additional share to the estate and increases the shares of other beneficiaries. Thus the reason for requiring judicial approval in other jurisdictions is not present here.
Appellant makes the further argument that to allow withdrawal 1 ‘ at any time without court approval would not be consistent with orderly estate administration ”, since “ extra administration work and expense will be involved ”. This, however, would seem to be exclusively the concern of the executors, who make no complaint here. All that is required in the present case is to take the difference between the widow’s interest under the will and her intestate share and allot that difference to the beneficiaries entitled thereto — a mere matter of accounting — and the reverse of what the executors here did when the widow filed her notice of election.
It is clear from the foregoing discussion that no legislative or other public policy or legal precedent compels a holding that a notice of election may not be withdrawn under the circumstances here presented, where the rights of other beneficiaries or creditors are in nowise invaded, where there is no prejudice and where the final accounting has not yet been made. The right of election, which is a personal right, is purely statutory, to be exercised only as prescribed by statute. It was so exer *343 cised here. The power to surrender this right is neither prescribed nor forbidden by statute, and we may assume that the Legislature was satisfied to leave such a situation to be governed by general principles of law. (See Matter of Moore, 165 Misc. 683, 689, affd. 254 App. Div. 856, affd. 280 N. Y. 733; People ex rel. McLaughlin v. Board of Police Comrs., 174 N. Y. 450, 456.) As the Appellate Division noted, the identical result could have been achieved if the widow, instead of filing a notice of withdrawal, had filed an assignment to the same beneficiaries of all her interest in the difference between her share under the will and her intestate share, and the executors would then have had to make the same adjustment in their account. Inasmuch, therefore, as no adverse rights have intervened, and no prejudice has been shown as to creditors of the widow or as to other persons interested in the estate, we agree with the courts below that the notice of withdrawal dated May 24, 1955, and filed prior to the accounting, was valid and effective, if voluntarily made.
This brings us to appellant’s second ground of objection, heretofore referred to, namely, that the withdrawal notice was invalid since the widow did not act voluntarily and of her own free will. The Surrogate first expressed the view that this ground of objection was “ in terms too broad and vague to stand against attack ”. He then assumed, however, that it could be read “as a charge that the widow’s withdrawal of her notice of election was rendered ineffective because of its having been ‘ the result of unreasonable pressure, possibly constituting duress, exerted either by * * * Virginia A. Carter * * * or by other persons whose names are at present unknown to objectant ’ ”. Nevertheless, he held that the validity of the notice would not be open to question, since the “ accounting executors are not charged with knowledge of any infirmity in the notice of withdrawal and if one exists and was created by the wrongful act of a third person then the remedy lies elsewhere than in this proceeding or in this forum ”, citing Matter of Goldstein (176 Misc. 366). It may be fairly assumed that because of the latter view, which we think is erroneous, no leave was given to appellant to plead over.
That the “ accounting executors are not charged with knowledge of any infirmity in the notice of withdrawal ” is irrelevant. *344 The Surrogate has jurisdiction of the estate, and would have power to set aside a widow’s involuntary relinquishment of her statutory rights, irrespective of who was responsible for such relinquishment, just as he may refuse to probate a will obtained by undue influence or fraud. Indeed, the very purpose of section 18 — to protect a surviving spouse from the testator’s willfulness or neglect—would be utterly defeated if a Surrogate were powerless to guard the spouse against involuntary surrender of what the statute has said should be hers.
The Goldstein case (supra) is not authority for the Surrogate’s holding here. There, a widow attempted to vacate the decree on accounting in order to file her election. The application was made more than one year after the issuance of letters. Stating that the question was “purely one of statutory construction ”, the Surrogate held (p. 367) “that the limitations in the section are exclusive and that, since twelve months have elapsed since letters issued, no right of election now exists ” (emphasis supplied). As an afterthought, however, the Surrogate indicated in the last sentence of his opinion that the widow might nevertheless have a remedy by bringing an action for damages against the person who allegedly defrauded her. The actual decision was of course correct, but involves a quite different issue. It would be anomalous to say that respondent Virginia Carter may recover from the estate the amount of her expenses (the consequence of-which she alleges was the withdrawal of said notice), as the Appellate Division said she might upon a proper showing, on the theory that the beneficiaries would profit from such services, but that the widow’s estate may not in the same proceeding assert its claim of involuntariness with respect to the notice of withdrawal. The beneficiaries must take the consequences either way.
In affirming, the Appellate Division made no reference in its opinion to the sufficiency of the allegations of appellant’s second ground of objection, but merely stated: “ The widow’s estate is, of course, in no position to object because its decedent surrendered an interest that she had, if in fact she had the capacity and voluntarily did so surrender her interest.” (Emphasis supplied.) That is precisely appellant’s claim— that she did not voluntarily surrender her interest; and it would follow that in the absence of such voluntariness, her executor should be entitled to attack the withdrawal notice in .this proceeding.
*345 While recognizing the fact that the widow can no longer speak for herself, and that pleadings in the Surrogates’ Courts are rather liberally construed (Matter of Dixon, 7 Misc 2d 812, 813-814, affd. 2 A D 2d 987, motion for leave to appeal denied 3 A D 2d 672; Matter of Baum, 11 Misc 2d 934), we think that the allegations of the second ground of objection are somewhat equivocal and indefinite (Surrogate’s Ct. Act, § 49), but, under the circumstances of this case, leave should be given to replead the allegations as to involuntariness ‘ ‘ as the result of unreasonable pressure, possibly constituting duress ” definitely and sufficiently. This will not unduly delay the settlement of the account since there will undoubtedly be a hearing in any case on the related question raised by the second objection of Virginia A. Carter heretofore referred to. Inasmuch as the trial of this objection will very probably disclose the reasons for the withdrawal and the connection of Mrs. Carter therewith, it would seem only reasonable to permit appellant to try out at the same time its related allegation of involuntariness, when sufficiently pleaded.
Accordingly, the order, insofar as appealed from, should be affirmed, but the appellant granted leave to plead over the objection denominated in its pleading as “ First, (b) ” within 20 days, with costs payable out of the estate to all parties appearing separately and filing briefs. The question certified should be answered in the negative.

 Except in the very narrow case presented by paragraph [e] of subdivision 1 of said section where the intestate share is less than $2,500.