In the Matter of the Accounting of Y. B. GARDEN et al., as Executors of CLAIRE R. WRIGHT, Deceased, Respondents. MARY ROBINSON, Appellant; HELEN W. ERSKINE et al., Respondents.

First Department, June 4, 1959.

*Selma M. L. Berliner* of counsel (*Ephraim Berliner* and *Jay H. Rick* with her on the brief; *Schlesinger & Berliner*, attorneys), for appellant.

*Melville H. Cane* of counsel (*Pincus Berner* and *Paul Gitlin* with him on the brief; *Ernst, Cane & Berner*, attorneys), for Helen W. Erskine, respondent.

*Leonard M. Wallstein, Jr.,* and *David E. Pitcher, Jr.,* of counsel (*Corbin, Bennett & Delehanty*, attorneys for Harold H. Corbin; *Wallstein, Menschel & Wallstein*, attorneys for Y. B. Garden), for executors, respondents.

*Per Curiam.* In a proceeding to settle the account of executors, the Surrogate directed that insurance proceeds received in compensation for a missing diamond ring should be paid to the

specific legatee of the decedent's jewelry generally. Objectant, the decedent's mother, appeals. Involved is the question of whether the legacy had been adeemed because the ring could not be found in a search commenced after the decedent's death.

It is well established that a specific legacy will fail if the subject of it has ceased to exist so as not to be a part of the testator's property at his death. (*Matter of Ireland,* 257 N. Y. 155, 158; *Matter of Hilpert,* 165 Misc. 430 [WINGATE, S.]; 96 C. J. S., Wills, § 1177.) Ademption is in no wise dependent on the intention of the testator. It is the fact of change alone in the nature of the property that is significant. (*Matter of Brann,* 219 N. Y. 263, 268.) Thus, an ademption may be worked by unintended transfer, such as condemnation or conversion, as well as by abandonment, sale, gift, or other intentional act of the testator. (*Ametrano* v. *Downs,* 62 App. Div. 405, affd. 170 N. Y. 388; *Matter of Hilpert, supra; Durrant* v. *Friend,* 5 DeG. & Sm. 343; 2 Jarman, Wills [8th ed.], p. 1065.)

The burden of proving that an article specifically bequeathed was a part of the estate at the time of testator's death is on the person claiming such continued existence and status (*Matter of Horn,* 317 Pa. 49; *Matter of Mercer,* 171 L. T. R. 254; 96 C. J. S., Wills, p. 1005. Cf. *Matter of Baker,* 42 App. Div. 370). Thus, in order to prevent the proceeds of the insurance policy from falling into the residuary estate, the legatee, rather that the objectant, must establish that the ring was a part of the estate at the time of death.

The ring in question was believed to have been in the decedent's possession two years before the date of her death. At that time she was issued an insurance policy covering, among other jewelry, the ring. The ring was not found among the decedent's effects, when a search was conducted shortly after her death. Thereafter the executors made claim against the insurance carrier and collected the insurance proceeds. There is no other proof as to the whereabouts or disposition of the ring.

The legatee relies on the fact of payment by the insurance company to establish that at the date of decedent's death, she was either in possession of the ring or entitled to its possession. However, the fact of payment is, in this context, of no probative force. There is nothing in this record to indicate the facts on which the insurer based its decision to make payment. There is nothing, moreover, to negative the possibility that the decedent may have given, abandoned, or sold the ring, or that it was destroyed before her death. So, too, that the insurer may have believed or did believe the ring to be lost or stolen, or believed itself vulnerable on such a claim, and, therefore, paid on its

policy, is not material. In short, the record is barren of any facts which might account for the ring in the two years since it was last believed to have been in the decedent's possession. Hence, the legatee has not sustained her burden of proof.

Objectant raises various other points relating to the disposition of certain specific items of personal property, but these do not warrant discussion, because there is no basis for overruling the Surrogate's conclusions. There is likewise insufficient ground to surcharge the executors for failure to invest a greater portion of the excess funds of the estate.

Accordingly, the decree should be modified, on the law, and on the facts, to hold that the legacy under paragraph Third of the will of a diamond ring has been adeemed, and otherwise be affirmed in all respects, with costs to all parties filing briefs, payable out of the estate.

M. M. FRANK and McNALLY, JJ. (dissenting). We are constrained to dissent in part, and vote to affirm the decree, on the opinion of the learned Surrogate. In addition, we must reject the thesis that the possibility exists "that the decedent may have given, abandoned or sold the ring * * * before her death." The speculative suggestion finds no support in the record. Moreover, such an assumption would imply an imprudent and illogical course of conduct by the decedent, for it must necessarily include the premise that she would make an *inter vivos* gift of the ring after disposing of her jewelry by will, and that after giving, abandoning or selling a valuable ring, she would still continue to pay insurance premiums covering its loss or theft. While the record is devoid of proof as to the extent of the investigation made by the insurance company, it is at least a fair inference that the payment of the insurance claim was predicated upon loss or theft of the ring and precludes any other reason.

BREITEL, J. P., RABIN and STEVENS, JJ., concur in *Per Curiam* opinion; M. M. FRANK and McNALLY, JJ., dissent in part and vote to affirm in a memorandum.

Decree modified, on the law and on the facts, to hold that the legacy under paragraph Third of the will of a diamond ring has been adeemed, and otherwise affirmed in all respects, with costs to all parties filing briefs, payable out of the estate.

Settle order.