OPINION OF THE COURT
Eugene E. Peckham, J.
*500 Decedent died on April 16, 2006 and on July 5, 2006 letters testamentary were issued to Stephanie G. Beck, an attorney-at-law. On July 21, 2006, Mary H. Oestrich, the surviving spouse filed an election to take against the will pursuant to EPTL 5-1.1-A. The present proceeding is brought by a petition from the surviving spouse to cancel her previously filed right of election. The notice of withdrawal of the election is dated March 16, 2008 and the petition is dated April 2, 2008 and was filed April 4, 2008.
EPTL 5-1.1-A (c) (5) provides:
“Upon application by a surviving spouse who has made an election under this section, the court may make an order canceling such election, provided that no adverse rights have intervened and no prejudice is shown to creditors of such spouse or other persons interested in the estate. Such application shall be made on notice to such persons and in such manner as the court may direct.”
Decedent’s will left his entire estate in 13 shares to various relatives and friends, one of whom is the surviving spouse. The reason the spouse wishes to cancel her election is that she has now discovered that she will receive about $25,355 more of the probate estate due to her one-thirteenth share than she would by exercising her election. This is because she has received testamentary substitutes that exceed the one-third share of the net estate she would be entitled to as a result of the election. However, if the election is cancelled the other 12 residuary beneficiaries will receive about $2,113 less apiece.
The executrix of the estate has filed an affirmation in which she states the estate has been fully distributed in 13 shares of $25,355, including a share to the surviving spouse. This was done by the executrix after she was served with the notice of withdrawal of the election in this matter and the petition, but before the court had acted on the petition. In her affirmation she states checks were mailed to all 13 beneficiaries in two sets on April 9, 2008 and April 30, 2008.
After the petition was filed the court appointed Christopher J. Moran, Esq. as guardian ad litem for five of the beneficiaries who are infants. The guardian ad litem has filed objections to the grant of the petition. His basic objection is that his clients will be prejudiced by withdrawal of the election because their shares of the estate will be reduced by a proportionate share of the $25,355 distributed to the surviving spouse.
*501 The question presented is whether the reduction in the shares of the other 12 beneficiaries is prejudicial to them. This is a question of first impression as neither counsel nor the court have found any cases construing EPTL 5-1.1-A (c) (5) nor its predecessor EPTL 5-1.1 (d) (6) since adoption in 1967.
The leading case prior to the adoption of the EPTL was Matter of Allan (5 NY2d 333 [1959]). In that case the Court of Appeals held that a right of election could be withdrawn “where the rights of other beneficiaries or creditors are in nowise invaded, where there is no prejudice and where the final accounting has not yet been made.” (Matter of Allan at 342.) It is obvious the language and holding of Allan were incorporated into the language of EPTL 5-1.1 (d) (6) and continued into EPTL 5-1.1-A (c) (5).
In Allan the withdrawal of the spouse’s election resulted in an increase in the residuary shares. Here the opposite is the case, withdrawal of the election would decrease the other residuary shares. In the language of Allan, the rights of other beneficiaries have been “invaded.” (Matter of Allan at 342.) Such a loss of a monetary or economic benefit is prejudicial to the other beneficiaries. (A. C. Aukerman Co. v R.L. Chaides Constr. Co., 960 F2d 1020 [Fed Cir 1992].) Simply put, each of the 12 other beneficiaries lose about $2,113 apiece if the cancellation of the election is approved. That is prejudicial to them and adversely affects their rights.
The petition to approve cancellation of the surviving spouse’s election is denied. The surviving spouse shall return to the estate for distribution to the other 12 residuary beneficiaries the sum of $25,355, plus interest at 9% from April 30, 2008 until repaid.
In addition, it is clear the executrix has made an improper distribution. As set forth in her affirmation, she went ahead and distributed to the spouse on the assumption that withdrawal of the election would be approved by the court. (Beck affirmation lili 6, 21, 22.) A fiduciary is subject to surcharge for making improper distributions. (Matter of Camarda, 63 AD2d 837 [4th Dept 1978]; Matter of Agar, NYLJ, Aug. 28, 1986, at 5, col 2 [Sur Ct, NY County]; Matter of Laemmle, NYLJ, June 8, 1979, at 12, col 2 [Sur Ct, Bronx County].)
The executrix should have known not to make distribution to the surviving spouse prior to the court’s approving or disapproving the petition to cancel the election as required by EPTL 5-1.1-A (c) (5). It has been held that an executrix may be *502 conditionally surcharged for amounts improperly paid to the extent the estate is not reimbursed by the recipient of the improper payment. (Matter of Lippner, 135 Misc 2d 34 [Sur Ct, Kings County 1987].) Accordingly, Stephanie G. Beck is hereby surcharged in the amount of $25,355, plus interest, or whatever lesser portion of such improper distribution is not repaid to the estate by the surviving spouse.
The pro tanto rule does not apply to limit the amount to be refunded to the estate in this case. That rule does not apply when a fiduciary makes payment prior to a court order that is required to authorize the payment. (Matter of Wright, 15 Misc 2d 225, 236 [Sur Ct, NY County 1958], mod on other grounds 8 AD2d 158 [1959], affd 7 NY2d 365 [I960].)