[No. 47331–5.   En Banc.   July 23, 1981.]

THE CITY OF EVERETT, *Plaintiff,* v. ESTATE OF ODDMUND SUMSTAD, *Respondent,* AL MITCHELL, ET AL, *Petitioners.*

*Lanning & Bryan,* by *Robert S. Bryan,* for petitioners.

*Franklin & Watkins,* by *Wilfred E. Schlicker,* for respondent.

DOLLIVER, J.—The City of Everett commenced an interpleader action against the seller (the Sumstad Estate) and the buyer (Al and Rosemary Mitchell) of a safe to determine who is entitled to a sum of money found in the safe. Both the Estate and the Mitchells moved for summary judgment. The trial court entered summary judgment in favor of the Estate. The Court of Appeals affirmed. *Everett v. Estate of Sumstad,* 26 Wn. App. 742, 614 P.2d 1294 (1980).

Petitioners, Mr. and Mrs. Mitchell, are the proprietors of a small secondhand store. On August 12, 1978, the Mitchells attended Alexander's Auction, where they frequently had shopped to obtain merchandise for their own use and for use as inventory in their business. At the auction the Mitchells purchased a used safe with an inside compartment for $50. As they were told by the auctioneer when they purchased the safe, the Mitchells found that the inside compartment of the safe was locked. The safe was part of the Sumstad Estate.

Several days after the auction, the Mitchells took the safe to a locksmith to have the locked compartment opened. The locksmith found $32,207 inside. The Everett Police Department, notified by the locksmith, impounded the money.

We agree with the Court of Appeals that the question is not whether the Estate, through its agent, entrusted the safe and its contents to the auctioneer who sold it in the ordinary course of business. Clearly the entrustment did occur. RCW 62A.2–403(2); *see* Restatement (Second) of

Agency § 26 (1958). The issue is whether there was in fact a sale of the safe and its unknown contents at the auction. In contrast to the Court of Appeals, we find that there was.

A sale is a consensual transaction. The subject matter which passes is to be determined by the intent of the parties as revealed by the terms of their agreement in light of the surrounding circumstances. *West Coast Airlines, Inc. v. Miner's Aircraft & Engine Serv., Inc.,* 66 Wn.2d 513, 518, 403 P.2d 833 (1965). The objective manifestation theory of contracts, which is followed in this state (*Plumbing Shop, Inc. v. Pitts,* 67 Wn.2d 514, 408 P.2d 382 (1965)), lays stress on the outward manifestation of assent made by each party to the other. The subjective intention of the parties is irrelevant.

> A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.

*Hotchkiss v. National City Bank,* 200 F. 287, 293 (S.D.N.Y. 1911) per L. Hand, J.

As stated in *Washington Shoe Mfg. Co. v. Duke,* 126 Wash. 510, 516, 218 P. 232, 37 A.L.R. 611 (1923):

> The apparent mutual assent of the parties, essential to the formation of a contract, must be gathered from their outward expressions and acts, and not from an unexpressed intention.

*Washington Shoe Mfg. Co.,* at 516.

The inquiry, then, is into the outward manifestations of intent by a party to enter into a contract. We impute an intention corresponding to the reasonable meaning of a person's words and acts. *Plumbing Shop, Inc. v. Pitts, supra.* If the offeror, judged by a reasonable standard, manifests an intention to agree in regard to the matter in

question, that agreement is established. *Gaasland Co. v. Hyak Lumber & Millwork, Inc.*, 42 Wn.2d 705, 711, 257 P.2d 784 (1953); *Washington Shoe Mfg. Co. v. Duke, supra.*

There are few reported cases on whether the unknown contents of an item pass with its sale, and even fewer that deal with consensual transactions. The cases are collected in Annot., *Title to Unknown Valuables Secreted in Articles Sold*, 4 A.L.R.2d 318 (1949). Those which are pertinent are analyzed by the dissent in *Everett v. Estate of Sumstad*, 26 Wn. App. 742, 749, 614 P.2d 1294 (1980), and need not be reviewed here.

The case upon which the Court of Appeals relies, *West Coast Airlines, Inc. v. Miner's Aircraft & Engine Serv., Inc., supra,* is inapposite. In that case, a commercial scrap metal company, Junk Traders, removed several containers of scrap metal from plaintiff West Coast Airlines' storage yard. Inadvertently, two containers in which aircraft engines were stored were removed by Junk Traders along with the scrap metal. West Coast, however, retained Federal Aviation Agency documents of title for the engines. A year later, Mr. Miner, president of Miner's Aircraft, learned about the engines from a competitor of Junk Traders. He purchased both engines for $125 and shortly thereafter resold one of them to a fourth party without the Federal Aviation Agency documents. West Coast first became aware of the mistake as a result of a telephone conversation in which Mr. Miner told a West Coast employee that the federal records for the engines would be "worth a jug of booze to me". *West Coast Airlines*, at 517. Shortly thereafter, West Coast commenced suit to recover the engines.

In *West Coast Airlines,* the aircraft engines were clearly not intended to be sold to Junk Traders. The inclusion of the engines in the sale of scrap metal was inadvertent and wholly unknown to both parties. Neither party was aware the sealed containers might hold anything other than scrap metal. Furthermore, West Coast Airlines retained the federal documents that must be transferred to the purchaser upon the sale of an aircraft engine, a clear indication it did

not intend to pass title to the engines.

In the case before us, the purchasers stated in their affidavit:

[W]e saw that the top outer–most door with a combination lock was open, and that the inner door was locked shut. That inner door required a key to open, and we learned that the safe would have to be taken to a locksmith to get the inner door opened because no key was available. We also learned that the combination for the outer lock was unknown. The auctioneer told the bidders that both this and the other safe had come from an estate, that both were still locked, that neither had been opened, and that the required combinations and key were unavailable for either.

The auctioneer's affidavit stated that:

I told the crowd at the auction that [the safes] were from an estate, that they were still locked and had never been opened by me and that I didn't have the combinations.

■ These affidavits are undisputed. In addition, the Mitchells were aware of the rule of the auction that all sales were final. Furthermore, the auctioneer made no statement reserving rights to any contents of the safe to the Estate. Under these circumstances, we hold reasonable persons would conclude that the auctioneer manifested an objective intent to sell the safe and its contents and that the parties mutually assented to enter into that sale of the safe and the contents of the locked compartment.

In the words of the dissenting judge in the Court of Appeals, at page 757:

The unique facts of this case make it one of those apparently rare instances in history in which the objective manifestations of the contracting parties reflected a mutual assent to the sale of the unknown contents of the object sold. The function of a safe is to provide a place for storing one's money or other valuables. When a locked safe is sold without the key, under all of the circumstances present in this case, the reasonable expectations of the buyer should be protected.

We concur in this view.

While the request by the Mitchells for attorney fees was

858

properly denied (*see Everett v. Estate of Sumstad, supra* at 748), we hold it was error to grant the Estate's motion for summary judgment and error not to grant the motion for summary judgment by the Mitchells. The Court of Appeals is affirmed as to attorney fees and reversed as to the granting of the summary judgment to the Estate. This matter is remanded to the trial court for entry of the summary judgment in favor of the Mitchells.

BRACHTENBACH, C.J., ROSELLINI, STAFFORD, UTTER, HICKS, WILLIAMS, and DIMMICK, JJ., and COCHRAN, J. Pro Tem., concur.