BEVERLY BANK, Plaintiff-Appellee, v. COLEMAN AIR TRANSPORT *et al.*, Defendants-Appellants.

First District (3rd Division) No. 84—2061

Opinion filed June 28, 1985.

Richard M. Kates, of Chicago, for appellants.

Coakley & Smith, Chartered, of Chicago (Joseph A. Coakley, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Beverly Bank, brought this action against defendants, Coleman Air Transport Corporation and Philip Coleman (Coleman), seeking to recover on two promissory notes signed by the Corporation and guaranteed by Coleman. The proceedings against the corporation were stayed by an involuntary bankruptcy, but the trial court granted summary judgment in favor of plaintiff against Coleman. He appeals.

In 1972, Coleman incorporated Coleman Prop-Jet Sales Corporation. Plaintiff extended a line of credit to Prop-Jet which was personally guaranteed by Coleman on April 25, 1974. Specific aircraft and Coleman's personal securities were used as collateral. Coleman Aircraft Corporation, incorporated in 1975, also had a borrowing relationship with plaintiff which required Coleman's personal guaranty. On May 14, 1978, Coleman wrote to J. Dennis Huffman, plaintiff's vice-president, requesting the return of his personal securities and indicating that he would no longer personally guaranty the corporate loans used to purchase aircraft.

Coleman Air Transport was incorporated on May 2, 1978, and on January 16, 1979, Coleman Prop-Jet was merged into the new corporation. Because Coleman was one of plaintiff's directors, in accordance with State law, the board of directors had to approve all loans to Coleman's companies exceeding $10,000. (Ill. Rev. Stat. 1983, ch. 17, par. 347(1).) On July 17, 1979, the renewal of the line of credit to Coleman Air Transport was approved. On July 30, 1979, Huffman wrote to Coleman advising him of the terms of the line of credit. The letter did not mention a personal guaranty.

Coleman, as president of Air Transport, signed a promissory note for $925,000 on May 14, 1979, and for $575,000 on August 2, 1979, with interest at plaintiff's prime rate plus 1%. The corporation defaulted on both notes. Plaintiff advised Coleman that it was enforcing the guaranty. In a letter dated April 9, 1980, Coleman denied that such a guaranty existed. Plaintiff filed a complaint in two counts against the corporation and a third count against Coleman based on the personal guaranty he signed and which was dated January 16, 1979.

Coleman filed a verified answer on July 15, 1980, admitting plaintiff's allegations that a guaranty had been signed and delivered and was "in full force and effect" at the time the loans were made to the corporation. The verification was made by Coleman's attorney. The answer denied only those paragraphs of the complaint which dealt with the amount of damages and which requested fees and costs.

Following a substitution of attorneys, Coleman filed a motion to dismiss count III of the complaint. In the motion, Coleman maintained that the guaranty was unenforceable because it was indefinite and unlimited as to duration and amount. Coleman also filed a counterclaim alleging, among other things, that the guaranty should be rescinded because it was procured by fraud on January 16, 1979. According to Coleman, plaintiff's board of directors met to consider the renewal of the corporation's line of credit and after the meeting, Coleman was asked to sign various documents as president of the corporation. The guaranty, which he never agreed to sign, was included with these documents by an unknown agent of plaintiff.

Plaintiff filed a motion to dismiss the counterclaim pointing out that Coleman had admitted the execution of the guaranty in his verified answer and that his claim of fraud was waived by his failure to raise it as an affirmative defense. Coleman then filed a motion for leave to amend his answer supported by his affidavit which stated that Coleman's previous attorney did not consult with him before preparing the original answer, that the attorney did not send the answer

to him for review and that the verification by his attorney was made through mistake or inadvertence. The amended answer he sought to file denied plaintiff's allegations, and his affirmative defense again asserted that the guaranty was fraudulently procured. The trial court granted leave to amend the defense but left open the issue whether the original verified answer would stand as a binding judicial admission.

Plaintiff answered the counterclaim denying that Air Transport's line of credit was discussed at the January board meeting as well as denying the other allegations. Plaintiff also filed a motion for summary judgment.

In support of its motion, plaintiff attached affidavits from Mary Ann Boline, Robert Hanson, and Huffman; Coleman's deposition; the original verified answer; the promissory notes; and Coleman's executed guaranty. The affidavit by Boline, a secretary in the aircraft loan department, stated that on January 31, 1979, she sent Coleman a corporate depository resolution and a corporate borrowing resolution for the corporation, a guaranty for Coleman to sign, and a signature card for a corporate checking account. When the forms were returned, both resolutions indicated that the corporation's board of directors met on January 16, 1979, to adopt the resolutions. The corporate secretary's signature on the borrowing resolution, however, was dated February 16. Boline received the completed documents on or about February 8. Plaintiff attached these documents and a collateral receipt for the guaranty dated February 9, to Boline's affidavit.

The affidavit of Hanson, plaintiff's vice-president and secretary, stated that the corporate minutes showed that Coleman was not present at nor was he paid for the January 1979 meeting, controverting Coleman's claim of fraud on that date. The renewal of Coleman's line of credit was not discussed at that meeting, but was approved at the July 1979 meeting, which Coleman attended.

Huffman's affidavit stated that Coleman had been a customer of plaintiff since 1974; that in January 1979, following the merger of Coleman Prop-Jet Sales and Coleman Air Transport, Coleman requested that the business relationship continue; that Boline was instructed to send documents to Coleman for the new corporation, and that these documents, including Coleman's guaranty, were executed and returned to plaintiff.

Contrary to his affidavit, Coleman stated at his deposition that he did not know whether he attended the January 16, 1979, meeting where he believed the guaranty was slipped in among other corporation documents for him to sign. In his counteraffidavit, filed in re-

sponse to the motion for summary judgment, Coleman prefaced his statement by saying "because the information to which I refer in this paragraph was not available to me when I gave my deposition in this case and when I signed the Amended Answer to Count III in this case, my memory now is considerably more refreshed than it was before, and to the extent that facts stated herein may be inconsistent to facts stated previously, the facts stated herein are the correct facts." In this second affidavit Coleman stated that he refused to personally guaranty corporate borrowing after 1978; that he did not sign any guaranties in 1979; and that the only way he could have signed the guaranty here was if it was given to him with other documents at the Bank and if one of plaintiff's employees represented to him that the documents pertained to his function as a director without his having time to read the documents before signing them.

The trial court granted summary judgment on liability in favor of plaintiff. When Coleman failed to appear at the hearing on damages, the trial court, based on Huffman's affidavit, entered judgment in the amount of $831,817.04. The trial court subsequently denied Coleman's motion to vacate and for reconsideration.

On appeal, Coleman contends that the trial court improperly considered affidavits filed by plaintiff in support of its motion for summary judgment, that the guaranty was procured by fraud, and that summary judgment was improperly granted because a material question of fact remains. We hold, however, that Coleman's admission of liability in his original verified answer was binding on him and that, therefore, the entry of summary judgment was proper.

 Generally, an amended pleading supersedes the prior pleading. (*Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749.) However, where the original pleading is verified, it remains part of the record. (*Robins v. Lasky* (1984), 123 Ill. App. 3d 194, 462 N.E.2d 774.) Any admissions which are not the product of mistake or inadvertence, contained in the original verified pleading, are binding judicial admissions. (*American National Bank & Trust Co. v. Erickson* (1983), 115 Ill. App. 3d 1026, 452 N.E.2d 3.) Such an admission has the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. *Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 376 N.E.2d 621.

██ █ Attorneys are deemed agents of their clients for purposes of making admissions in all matters relating to the progress and trial of an action. (*Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 371 N.E.2d 260.) An attorney may verify a pleading if he has knowledge of the facts and the verification has the same effect as if the party

signed the pleading himself. *Standard Bank & Trust Co. v. Cooper* (1968), 100 Ill. App. 2d 42, 241 N.E.2d 564; Ill. Rev. Stat. 1983, ch. 110, par. 2—605.

■ In his affidavit, filed in support of his motion for leave to amend the verified answer, Coleman stated that his attorney did not consult with him or allow him to review the answer and that the answer was the product of mistake or inadvertence. These unsupported and largely conclusionary statements are insufficient to show mistake or inadvertence. There is nothing in the record before us which indicates that Coleman's attorney did not have knowledge of the statements in the answer or that he did not have authority to file a verified answer in behalf of his client. Indeed, we note that Coleman asserted the attorney-client privilege in the trial court and prevented any disclosure of the circumstances surrounding the verification of the original answer. We hold that Coleman's verified answer admitting plaintiff's allegations that a guaranty had been signed and delivered and was in full force and effect at the time of the loan to the Corporation constituted a binding judicial admission against Coleman. The trial court properly granted summary judgment in favor of plaintiff.

■ Coleman also contends that the trial court erred in its award of interest charges on the loan. The note provided for prime interest rate plus 1%. In his affidavit seeking to vacate the award of damages, Coleman raised a new defense based upon the premise that the interest rates on the corporation's loans were based upon a false calculation of the prime interest rate. The affidavit went on to state that plaintiff "made available to either or both General Motors Acceptance Corporation or Sears Roebuck and Company a commercial rate of interest at least one half of a percent less than the rate claimed to be prime." Attached to the affidavit was a report, dated April 1, 1981, prepared for the United States House of Representatives Committee on Banking, Finance and Urban Affairs, entitled "An Analysis of Prime Rate Lending Practices at the Ten Largest United States Banks." The trial court denied Coleman's motion to vacate the award of damages. Coleman maintains that he was overcharged, and that there is a genuine issue of material fact requiring a trial as to the amount of damages.

Affidavits in support of, or in opposition to, summary judgment motions must consist of facts. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) The affiant must be able to testify to such facts if called as a witness at trial. (*Schultz v. American National Bank & Trust Co.* (1976), 40 Ill. App. 3d 800, 352 N.E.2d 310.) Conclusory matter cannot be considered. *Young v. Pease*

(1983), 114 Ill. App. 3d 120, 448 N.E.2d 586.

Coleman's affidavit contained conclusions that loans were made to "either or both" other commercial customers without setting forth any facts. The statement was not one of fact, and the trial court properly ruled that it was a conclusion not to be considered. Additionally, the committee report had absolutely no relevance to the present case. The trial court did not err in awarding damages based on plaintiff's stated prime rate of interest.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.