RICHARD MICHAEL *et al.*, Plaintiffs-Appellants, v. FIRST CHICAGO CORPORATION *et al.*, Defendants-Appellees.

Second District   No. 84—1099

Opinion filed December 20, 1985.—Rehearing denied January 21, 1986.

Bruce R. Kelsey, Joel G. Fina, and Penney L. Fillmer, all of Harold J. Spelman & Associates, of West Chicago, for appellants.

Peter J. Kilchenmann and Lynn Goldstein, both of Chicago, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Richard and Cathleen Michael, appeal from a judgment at the close of their case in a bench trial in favor of defendant, First National Bank of Chicago (First Chicago), in a declaratory judgment action brought to determine whether the plaintiffs were entitled to possession and ownership of certificates of deposit they found in a locked file cabinet sold by First Chicago.

The issues for our review are (1) whether certain judicial admissions were made in First Chicago's pleadings, and (2) whether the trial court's granting of First Chicago's motion for judgment at the close of plaintiffs' evidence on the issue of possession of the certificates of deposit was against the manifest weight of the evidence.

Plaintiffs' complaint for declaratory judgment was brought to declare possession and ownership in plaintiffs in certain certificates of deposit. First Chicago filed a counterclaim seeking possession and other relief concerning the certificates of deposit. Plaintiffs then filed two additional counts seeking a declaration that presentment of the certificates of deposit was excused and an order requiring First Chicago to pay the principal and interest on the certificates of deposit plus attorney fees. The case proceeded to a bench trial only on plaintiffs' initial complaint for declaratory judgment for possession of the certificates of deposit.

The relevant facts adduced at trial are as follows. Numerous file cabinets were purchased from First Chicago in June 1983 by Walter Zibton, a new and secondhand office supply and furniture dealer, as part of a group of items sold on an "as is" basis by First Chicago as they were no longer being used. Zibton had previously purchased used furniture from First Chicago. He looked at the furniture and made a bid on it. He bought the furniture as a group whether damaged or not. He did not care whether the file cabinets were locked or not. On other occasions, if he later discovered a file cabinet was locked, he would not call the bank to take them back—he bought them "as is." On occasion, he later found items in drawers of furniture he purchased. These items were junk and he threw them out. No one from First Chicago said anything about the contents of the furniture nor

did anyone tell him anything of value could be found in the file cabinets. He was not told what had been stored in the file cabinets. He did not expect to find anything of value in the file cabinets.

The file cabinets were put on sale at a parking lot sale in early July 1983. Charles Strayve indicated an interest in one of the file cabinets up for sale and was told by Zibton that he could have it, without paying anything, if he took all four file cabinets left on the lot. Some of the file cabinets were locked. Later that same day, Strayve gave one file cabinet, which was locked with no keys, to his friend Richard Michael.

About six weeks later, on August 18, 1983, Michael was moving the file cabinet in his garage. It fell over and several of the locked drawers opened revealing certificates of deposit stacked inside. He and his wife sorted through the over 1,600 certificates of deposit and found seven certificates that had not been cancelled or stamped paid which were worth a total of $6,687,948.85 with maturity dates ranging from October 8, 1982, to January 13, 1983. Six of the certificates of deposit were payable to "Bearer" and one was payable to the order of La Salle National Bank, trustee. The following day, Richard Michael contacted the FBI, which took possession of all of the certificates of deposit. This declaratory judgment action was filed August 24, 1983. Although not at issue in the trial for possession of the certificates, it appears from the record that the seven certificates of deposit had previously been paid by First Chicago.

First Chicago employees testified that the responsibility for storing paid certificates of deposit was changed to a different unit of the bank between March and May 1983. The certificates of deposit were moved from a vault to file cabinets at that time, each drawer labelled with a card stating "Paid Negotiable CDs" and indicating the numbers of the certificates of deposit contained in the drawer. The new unit responsible for storing certificates of deposit determined that they could not use the file cabinets, so the certificates of deposit were transferred to tote boxes. The file cabinets were randomly checked to determine if the contents were gone and were then transferred to the warehouse for sale. Two employees testified that, to their knowledge, only paid certificates of deposit were received for storage. Testimony of the bank employee in charge of selling used furniture also indicated that, although papers were occasionally found in a piece of furniture that was delivered to the warehouse, he did not know there was anything valuable in that filing cabinet and he sold Mr. Zibton the furniture, not certificates of deposit.

At the close of the plaintiffs' evidence, the court granted First

Chicago's motion for judgment in its favor, finding that plaintiffs had not established the certificates of deposit were abandoned, and ordering that First Chicago was entitled to possession and ownership of the certificates of deposit.

■ We address first the plaintiffs' contention that the trial court erred in failing to admit as evidence two claimed judicial admissions made by First Chicago in its verified pleadings. Immediately prior to the beginning of trial, plaintiffs filed several motions which, in essence, sought a finding that certain facts be deemed judicial admissions based on First Chicago's admissions in their verified pleadings. The trial judge reserved a ruling on the motions and no specific ruling was subsequently made on the motions, nor did plaintiffs later request a ruling. First Chicago also was given leave to amend its answer to paragraph 8.A.4. of the complaint, which it did.

The first pleading which plaintiffs contend contained a judicial admission is First Chicago's verified answer which admitted the allegation in paragraph 8.A.4. of the complaint. Paragraph 8.A.4. alleges "[t]hat Wallace Zibton secured said cabinets and contents including the instruments by way of purchase for value from one or more of the Defendants." The verified amended answer to paragraph 8.A.4. admitted that Zibton secured the cabinets by way of purchase for value and denied that Zibton obtained the certificates of deposit lost or mislaid in the cabinet by way of purchase for value from First Chicago. Plaintiffs argue on appeal that the issue of whether the filing cabinets and its contents *were purchased for value* should not have been a fact issue at trial because of the admission to this fact in First Chicago's original verified answer. They contend that the filing of the amended answer did not operate to change the judicial admission made in the original verified answer under current Illinois law.

First Chicago, as one of its arguments addressed to this issue, replies that the failure of plaintiffs to obtain a ruling on their pretrial motions for a finding of a judicial admission has waived the point for review. Generally, it is true that when the court reserves its ruling on a motion or an objection, the movant or objecting party must seek a decision or ruling in order to preserve the issue for review. (*Feldscher v. E & B, Inc.* (1983), 95 Ill. 2d 360, 365-66, 447 N.E.2d 1331; *In re Annexation to Village of Downers Grove* (1979), 22 Ill. App. 3d 122, 127-28, 316 N.E.2d 804.) However, although the trial court did not ever expressly rule on the motions, it is evident from the trial court's granting of First Chicago's motion for a judgment at the close of plaintiffs' case that it did not consider First Chicago's pleadings in question to constitute conclusive judicial admissions.

■ We, therefore, address the merits of plaintiffs' argument that the admission in First Chicago's verified original answer was a conclusive judicial admission of the fact that the cabinets and contents were purchased for value from First Chicago. Generally, an amended pleading supersedes the prior pleading. (*Foxcraft Townhome Owners Association v. Hoffman Rosner corp.* (1983), 96 Ill. 2d 150, 153-54, 449 N.E.2d 125; *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 670, 307 N.E.2d 749.) However, where the original pleading is verified, it remains a part of the record and any admissions contained in the original verified pleading which are not the product of mistake or inadvertance are binding judicial admissions (*Beverly Bank v. Coleman Air Transport* (1985), 134 Ill. App. 3d 699, 703, 481 N.E.2d 54; *Robins v. Lasky* (1984), 123 Ill. App. 3d 194, 198-99, 462 N.E.2d 774), and any such admission has the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. *Beverly Bank v. Coleman Air Transport* (1985), 134 Ill. App. 3d 699, 703, 481 N.E.2d 54.

■ From our examination of First Chicago's entire original answer and affirmative defense to plaintiffs complaint, it is clearly evident that First Chicago denied it intended to abandon or sell the certificates of deposit and admitted it intended to dispose of only the cabinets. The affirmative defense sets forth that the certificates of deposit were inadvertantly lost or mislaid in the file cabinets by First Chicago. In its motion to amend the original answer, First Chicago sets forth that the amended answer is necessary "to correct the mistaken inference which plaintiffs draw from the [original] Answer." First Chicago only intended to admit in its answer that the cabinets were secured by purchase for value and not that the certificates of deposit were also secured by purchase for value. Accordingly, the trial court properly allowed First Chicago to file an amended answer because of the mistaken inference which might be drawn from the original answer, and there is no judicial admission that the certificates of deposit were purchased for value.

■ The second purported judicial admission claimed by plaintiffs arises from First Chicago's allegation in paragraph 16 of its counterclaim that plaintiffs "as persons in possession of the Certificates are holders pursuant to Section 1—201(20) of the Code." Plaintiffs contend that First Chicago in this allegation made a judicial admission that plaintiffs are persons in possession of certificates of deposit. This pleading is clearly not an admission on the issue of *right to possession* of the certificates of deposit and is therefore not a judicial admission on that issue.

The remaining contention on appeal is whether the granting of First Chicago's motion for judgment at the close of the plaintiffs' case was against the manifest weight of the evidence. Plaintiffs contend the trial court failed to consider their primary argument for possession of the certificates of deposit that the certificates of deposit were obtained by a sale. They also maintain the finding that the certificates of deposit were lost or mislaid, rather than abandoned, was against the manifest weight of the evidence.

█ █ In nonjury cases where the trial court rules on a defendant's motion for judgment in his favor at the end of the plaintiff's case, the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110.) If plaintiff has failed to make out a *prima facie* case or, if plaintiff has made out a *prima facie* case but the trial court, as the finder of fact, in weighing plaintiff's evidence finds a negation of some of the evidence necessary to plaintiff's *prima facie* case, the court should grant the defendant's motion and enter judgment in his favor. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43.) On appeal, the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. 81 Ill. 2d 151, 154, 407 N.E.2d 43.

Plaintiffs' primary argument is that they were entitled to possession of the certificates of deposit because the certificates were the subject of a sale from First Chicago. They maintain that First Chicago's actions in the handling and sale of the certificates of deposit showed an objective intent to transfer the certificates along with the used file cabinets in which the documents were stored. In particular, plaintiffs assert that the facts are that First Chicago: (a) intended to dispose of all the used furniture, (b) intended to place the certificates of deposit in the filing cabinets sold, (c) knew the certificates were in the filing cabinets, (d) knew the filing cabinets were locked and contained valuable documents and they retained the keys, (e) sold the furniture in the past and on this occasion "as is," and (f) made the sale unconditional. While plaintiffs point out that the trial court, when announcing its decision of judgment for First Chicago, failed to address their argument that the certificates were obtained by a sale, the presumption is that the trial court found all issues and controverted facts in favor of the prevailing party. *National Acceptance Company of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 707, 418 N.E.2d 1114; *Stony Island Church of Christ v. Stephens* (1977), 54 Ill. App. 3d 662, 668, 369 N.E.2d 1313.

█ The plaintiffs argue that it was the objective intent of First

Chicago, as sellers, and Zibton, as buyer, that the file cabinet and its contents, which they ultimately received from Zibton, were unconditionally sold. The plaintiffs also rely on a recent decision of the Supreme Court of the State of Washington in *City of Everett v. Estate of Sumstad* (1981), 95 Wash. 2d 853, 631 P.2d 366. In *Sumstad*, a used safe was sold at auction as part of an estate sale and the buyers later found $32,207 inside a locked compartment of the safe. The affidavits showed that all sales were final, the auctioneer made no statements reserving rights to any of the contents of the safe, and the auctioneer told the purchasers that the inside compartment was locked, had not been opened, and the required combination and key were not available. Applying an objective manifestation theory of contracts, the court agreed with the dissenting judge in the Court of Appeals decision, who stated: "The unique facts of this case make it one of those apparently rare instances in history in which the objective manifestation of the contracting parties reflected a mutual assent to the sale of the unknown contents of the object sold." 95 Wash. 2d 853, 857, 631 P.2d 366, 368.

Here, First Chicago was selling only used furniture to Zibton. Neither First Chicago nor Zibton suspected that certificates of deposit or any other type of valuable had been left in the file cabinet. The evidence clearly shows that the intention of the parties was for First Chicago to sell to Zibton used furniture only, and Zibton was not speculating that other valuable items might be contained in the used furniture.

Where both buyer and seller were ignorant of the existence or presence of the concealed valuable, and the contract was not broad enough to indicate an intent to convey all the contents, known or unknown, the courts have generally held that as between the owner and purchaser, title to the hidden article did not pass by the sale. (Annot., 4 A.L.R.2d 318 (1949).) We find the decision in *City of Everett v. Estate of Sumstad* (1981), 95 Wash. 2d 853, 631 P.2d 366, relied on by plaintiffs, to be factually distinguishable from the case at bar. The facts in *Sumstad*, as indicated in the opinion, make it one of the rare instances in which the objective manifestations of the contracting parties reflected a mutual assent to the sale of the unknown contents of the object sold. (95 Wash. 2d 853, 857, 631 P.2d 366, 368.) The evidence here is that used office furniture was being sold, and the possibility that something valuable might be in any of the used furniture had nothing to do with the sale. Zibton testified he did not expect to find anything of value in the file cabinets. First Chicago did not intend to sell the contents of the file cabinets. The fact that the sale of

the used furniture was "as is" indicates the furniture was sold in its present condition, damaged or otherwise, and does not show an intent to sell the contents of the used furniture. Accordingly, the evidence does not support plaintiffs' contention that the certificates of deposit as contents of the used furniture were intended by either party to the sale to be sold along with the furniture.

Plaintiffs' alternative contention is that the certificates of deposit are abandoned property, rather than lost or mislaid property, which the finder is entitled to keep. Both parties cite *Paset v. Old Orchard Bank & Trust Co.* (1978), 62 Ill. App. 3d 534, 378 N.E.2d 1264, as the leading case in Illinois which sets forth the distinctions between the terms abandoned, lost, and mislaid property. Mislaid property is that which is intentionally put in a certain place and later forgotten; property is lost when it is unintentionally separated from the dominion of its owner; and property is abandoned when the owner, intending to relinquish all rights to the property, leaves it free to be appropriated by any other person. (62 Ill. App. 3d 534, 537, 378 N.E.2d 1264.) A finder of property acquires no rights in mislaid property, is entitled to possession of lost property against everyone except the true owner, and is entitled to keep abandoned property. 62 Ill. App. 3d 534, 537, 378 N.E.2d 1264.

■■ ■ For the purposes of this appeal, we need only determine whether the certificates of deposit are abandoned property. If otherwise, the owner is entitled to possession. Abandonment is generally defined as an intentional relinquishment of a known right. (*Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 447, 470 N.E.2d 1083; 1 Am. Jur. 2d *Abandoned, Lost & Unclaimed Property,* sec. 1 (1962).) As a general rule, abandonment is not presumed and the party seeking to declare an abandonment must prove the abandoning party intended to do so. 1 Am. Jur. 2d *Abandoned, Lost & Unclaimed Property* sec. 36 (1962); see *Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 447, 470 N.E.2d 1083.

■■ Plaintiffs basically argue that the certificates of deposit were abandoned as shown by evidence that they were intentionally placed in the cabinets, they were not forgotten, and the cabinets were sold with no reservation. We disagree. The paid certificates of deposit were stored in file cabinets marked "Paid Negotiable CDs" at First Chicago. When the maintenance of these paid certificates of deposit were transferred to another unit of First Chicago, the certificates were to be taken from the file cabinets and placed in other storage. The certificates were removed and the cabinets randomly checked to be sure the contents were gone. Then the file cabinets were marked

for movement to the furniture warehouse. Ultimately, the used cabinets and other used furniture were sold to Zibton as detailed above. The seven certificates of deposit in issue and some 1,600 others were found by plaintiffs in a locked drawer in one of several file cabinets sold to Zibton.

■■■ Plaintiffs failed to show First Chicago intended to abandon the certificates of deposit. It is readily apparent from the evidence that the certificates of deposit were to be transferred to other storage and some simply were overlooked and left in the file cabinets. The relinquishment of possession, under the circumstances here, without a showing of an intention to permanently give up all right to the certificates of deposit is not enough to show an abandonment. The trial court's finding for First Chicago at the close of plaintiffs' case was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH, P.J., and STROUSE, J., concur.