CONCURRING: GARYE L. VÁSQUEZ, Presiding Judge, and VIRGINIA C. KELLY, Judge.

278 P.3d 1287

Karen Spann GRANDE, as Personal Representative of the Estate of Robert A. Spann, Deceased, Petitioner/Cross–Respondent/Appellee,

v.

Sarina JENNINGS, a single woman; Clinton McCallum, a single man, Respondents/Cross–Claimants/Appellants.

No. 1 CA–CV 11–0148.

Court of Appeals of Arizona, Division 1, Department A.

May 31, 2012.

Polsinelli Shughart, P.C. by Andrew S. Jacob, Gregorio M. Garcia, Phoenix, Attorneys for Respondents/Cross–Claimants/Appellants.

Lewis and Roca LLP by George L. Paul, Phoenix, Attorneys for Petitioner/Cross–Respondent/Appellee.

## OPINION

PORTLEY, Judge.

¶ 1 This case asks us to resolve who owns the money found in the walls of a Paradise Valley home: the estate of the home's former owner or the couple who owned the home at the time of the discovery. The new homeowners appeal the summary judgment granted to the estate, and claim that the funds were abandoned when the home was sold "as is." For the following reasons, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Robert A. Spann lived in his Paradise Valley home until he passed away in 2001. His daughter, Karen Spann Grande ("Grande"), became the personal representative of his estate. She and her sister, Kim Spann, took charge of the house and, among other things, had some repairs made to the home.[1]

¶ 3 They also looked for valuables their father may have left or hidden. They knew from experience that he had hidden gold, cash, and other valuables in unusual places in other homes. Over the course of seven years, they found stocks and bonds, as well as hundreds of military-style green ammunition cans hidden throughout the house, some of which contained gold or cash.

¶ 4 The house was sold "as is" to Sarina Jennings and Clinton McCallum ("Jennings/McCallum") in September 2008. They hired Randy Bueghly and his company, Trinidad Builders, Inc., to remodel the dilapidated home. Shortly after the work began, Rafael Cuen, a Trinidad employee, discovered two ammunition cans full of cash in the kitchen wall, went looking, and found two more cash-filled ammo cans inside the framing of an upstairs bathroom.

¶ 5 After Cuen reported the find to his boss, Bueghly took the four ammo cans but did not tell the new owners about the find, and tried to secret the cans. Cuen, however, eventually told the new owners about the discovery and the police were called. The police ultimately took control of $500,000, which Bueghly had kept in a floor safe in his home.

¶ 6 Jennings/McCallum sued Bueghly for fraudulent misrepresentation, conversion, and a declaration that Bueghly had no right to the money, and Bueghly later filed a counterclaim for a declaration that he was entitled to the found funds. In the meantime, Grande filed a petition in probate court on behalf of the estate to recover the money. The two cases were consolidated in June 2009.

¶ 7 The estate filed a motion for summary judgment and argued that Jennings/McCallum had no claim to the money found in the home. After briefing, the motion was granted. The trial court found that there were

---

1. Robert Spann had allowed the home to fall into disrepair over the years.

"no questions of material fact as to whether Robert A. Spann abandoned or mislaid the currency found in the house purchased by [Jennings/McCallum]" and that the estate did not waive its rights because "[the personal representative] claimed the property as soon as she became aware of it." Final judgment pursuant to Arizona Rule of Civil Procedure 54(b) was entered on January 12, 2011, leading to this appeal.[2]

## DISCUSSION

¶ 8 Jennings/McCallum argue that summary judgment was inappropriate because there was a genuine issue of material fact as to whether the estate had abandoned its rights to the found money. Specifically, they assert that a jury could have found that Grande "consciously ignored" the possibility that additional large sums of money could be hidden in the home because she did not locate all of the cash that her father had withdrawn from the bank and did not systematically search all potential hiding spots; therefore, the estate abandoned any rights it had when the house was sold. As a result, Jennings/McCallum argue, they are entitled to the discovered funds.

### A.

¶ 9 We review a summary judgment de novo to determine "whether any genuine issues of material fact exist and whether the trial court properly applied the law." Brookover v. Roberts Enters., Inc., 215 Ariz. 52, 55, ¶ 8, 156 P.3d 1157, 1160 (App.2007) (citing Eller Media Co. v. City of Tucson, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000)).

We confine our review to the record presented to the trial court when it made its ruling.[3] GM Dev. Corp. v. Cmty. Am. Mortg. Corp., 165 Ariz. 1, 4, 795 P.2d 827, 830 (App.1990) (citations omitted). And, we view the facts "in the light most favorable to [Jennings/McCallum], the party against whom summary judgment was entered." Espinoza v. Schulenburg, 212 Ariz. 215, 216–17, ¶ 6, 129 P.3d 937, 938–39 (2006) (citing Duncan v. Scottsdale Med. Imaging, Ltd., 205 Ariz. 306, 308, ¶ 2, 70 P.3d 435, 437 (2003)). Summary judgment is appropriate "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." Orme Sch. v. Reeves, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

### B.

¶ 10 Although elementary school children like to say "finders keepers," the common law generally categorizes found property in one of four ways.[4] E.g., Benjamin v. Lindner Aviation, Inc., 534 N.W.2d 400, 406 (Iowa 1995) (citing Ritz v. Selma United Methodist Church, 467 N.W.2d 266, 269 (Iowa 1991)). Found property can be mislaid, lost, abandoned, or treasure trove. Id. (citing Ritz, 467 N.W.2d at 269); 1 Am. Jur.2d Abandoned, Lost, and Unclaimed Property § 12 (2012). Property is "mislaid" if the owner intentionally places it in a certain place and later forgets about it. Terry v. Lock, 343 Ark. 452, 37 S.W.3d 202, 207 (2001). "Lost" property includes property the owner unintentionally parts with through

---

2. After a bench trial in February 2011, the court determined that Grande, as the estate's personal representative, and not Bueghly, was the true owner of, and entitled to the possession of, the found funds.

3. We therefore do not consider the trial testimony from the Grande/Bueghly trial cited in the opening brief.

4. At least one court has recognized a fifth category—"embedded property"—which is property that becomes part of the earth. Corliss v. Wen-

ner, 136 Idaho 417, 34 P.3d 1100, 1104 (App. 2001). Generally, embedded property "belongs to the owner of the soil" unless the true owner claims the property. See Klein v. Unidentified Wrecked & Abandoned Sailing Vessel, 758 F.2d 1511, 1514 (11th Cir.1985) (citations omitted); see also 1 Am.Jur.2d Abandoned, Lost, and Unclaimed Property § 17 (2012) (footnote and citations omitted) ("'Property embedded in the earth' includes anything other than gold or silver which is so buried, and is distinguished, in this respect, from 'treasure trove.'").

either carelessness or neglect. *Id.* at 206. "Abandoned" property has been thrown away, or was voluntarily forsaken by its owner. *Id.* (citations omitted). Property is considered "treasure trove" if it is verifiably antiquated and has been "concealed [for] so long as to indicate that the owner is probably dead or unknown." 1 Am.Jur.2d *Abandoned, Lost, and Unclaimed Property* § 16 (2012).

▇▇▇ ¶ 11 A finder's rights depend on how a court classifies the found property. *Terry,* 37 S.W.3d at 206 (citation omitted); *Ritz,* 467 N.W.2d at 268–69; *Hill v. Schrunk,* 207 Or. 71, 292 P.2d 141, 142 (1956). In characterizing the property, a court should consider all of the particular facts and circumstances of the case. *Terry,* 37 S.W.3d at 206 (citing *Schley v. Couch,* 155 Tex. 195, 284 S.W.2d 333, 336 (1955)); *Corliss,* 34 P.3d at 1103 (citing 1 Am.Jur.2d *Abandoned, Lost, and Unclaimed Property* §§ 1–14 (1994)) (distinctions between categories of found property are determined by "an analysis of the facts and circumstances in an effort to divine the intent of the true owner at the time he or she parted with the property"). Under the common law, "the finder of lost or abandoned property and treasure trove acquires a right to possess the property against the entire world but the rightful owner regardless of the place of finding." *Corliss,* 34 P.3d at 1104 (citing *Terry,* 37 S.W.3d at 206). A finder of mislaid property, however, must turn the property over to the premises owner, "who has the duty to safeguard the property for the true owner." *Id.* (citing *Terry,* 37 S.W.3d at 206); *see also Benjamin,* 534 N.W.2d at 406 (citing *Ritz,* 467 N.W.2d at 269) ("The right of possession of mislaid property belongs to the owner of the premises upon which the property is found, as against all persons other than the true·owner.").

¶ 12 Significantly, among the various categories of found property, "only lost property necessarily involves an element of involuntariness." *Corliss,* 34 P.3d at 1104 (citation omitted). The remaining categories entail intentional and voluntary acts by the rightful

owner in depositing property in a place where someone else eventually discovers it. *Id.* For example, the Iowa Supreme Court has stated that "[m]islaid property is voluntarily put in a certain place by the owner who then overlooks or forgets where the property is," and that one who finds mislaid property does not necessarily attain any rights to it because possession "belongs to the owner of the premises upon which the property is found," absent a claim by the true owner. *Benjamin,* 534 N.W.2d at 406 (citation omitted). In *Benjamin,* the court determined that packets of money found in a sealed panel of a wing during an inspection of a repossessed airplane were mislaid property because the money was intentionally placed there by one of the two prior owners. *Id.* at 403, 407–08.

▇▇▇ ¶ 13 Arizona follows the common law. In *Strawberry Water Co. v. Paulsen,* we stated that in order to abandon personal property, one must voluntarily and intentionally give up a known right. 220 Ariz. 401, 408, ¶ 16, 207 P.3d 654, 661 (App.2008) (citation omitted); *see also* 1 Am.Jur.2d *Abandoned, lost, and Unclaimed Property* § 3 (2012) ("Abandonment ... is the owner's relinquishment of a right with the intention to forsake and desert it."). Abandonment is "a virtual throwing away [of property] without regard as to who may take over or carry on." 1 Am.Jur.2d *Abandoned, Lost, and Unclaimed Property* § 3 (footnote omitted). In fact:

> While personal property of all kinds may be abandoned, the property must be of such a character as to make it clear that it was voluntarily abandoned by the owner. In this connection, it has been said that people do not normally abandon their money; and, accordingly, that found money will not be considered as abandoned, but as lost or mislaid property.

25 Am.Jur.2d *Abandonment of Tangible Personal Property* § 2 (1981).

## C.

▇▇▇ ¶ 14 Here, it is undisputed that Spann placed the cash in the ammunition

cans and then hid those cans in the recesses of the house. He did not, however, tell his daughters where he had hidden the cans before he passed away. His daughters looked for and found many of the ammo cans, but not the last four. In fact, it was not until the wall-mounted toaster oven and bathroom drywall were removed that Cuen found the remaining cash-filled cans. As a result, and as the trial court found, the funds are, as a matter of law, mislaid funds that belong to the true owner, Spann's estate.

¶ 15 Other state courts have also characterized found money as mislaid funds. For example, in *Hill v. Schrunk,* the Oregon Supreme Court held that cash, which was wrapped in oiled paper, placed in waterproof containers, and found lodged in the bottom of a natural water pool on the decedent's property, belonged to him at his death,[5] and was mislaid rather than abandoned, lost, or treasure trove property. 292 P.2d at 142–43. Similarly, the Arkansas Supreme Court affirmed the trial court's finding that a dusty cardboard box containing about $38,000 and found in the ceiling of a motel room during renovation was mislaid property because " 'the money ... was intentionally placed where it was found for its security, in order to shield it from unwelcome eyes....' " *Terry,* 37 S.W.3d at 203–04, 208. As a result, the court affirmed the determination that the motel owner's rights to the funds were superior to those of the whole world except the true owner. *Id.* at 209.

### D.

¶ 16 Jennings/McCallum assert, however, that the mislaid funds were abandoned because Grande consciously ignored the fact that neither she nor her sister had found all of the money that their father had withdrawn from his bank account, and did not do more to find it. We disagree.

¶ 17 First, evidence of the decedent's cash withdrawals from the bank was not present-ed to the trial court as part of the summary judgment motion. Second, the fact that the trial court correctly determined that the funds were mislaid precludes the funds from being considered abandoned. *See Terry,* 37 S.W.3d at 207–09 (citations omitted) (A finder of lost or abandoned property acquires ownership rights inferior only to those of the true owner; in contrast, " '[t]he finder of mislaid property must turn it over to the owner or occupier of the premises where it is found ..., [who then has a] duty to keep mislaid property for the [true] owner, and ... must use the care required of a gratuitous bailee for its safekeeping until the true owner calls for it.' ").

¶ 18 Moreover, abandonment is generally not presumed, but must be proven. *United States v. Cowan,* 396 F.2d 83, 87 (2d Cir.1968) (citation omitted); *Michael v. First Chicago Corp.,* 139 Ill.App.3d 374, 93 Ill.Dec. 736, 487 N.E.2d 403, 409 (1985) (citations omitted). Here, the facts are undisputed that the estate did not know that the money was mislaid, and did not intend to abandon the funds. In fact, the evidence is to the contrary; once Grande learned of the discovery, she filed a probate petition to recover the property. Her action as the personal representative undermines the argument that the sisters abandoned the money through "conscious ignorance." *See, e.g., Gila Water Co. v. Green,* 29 Ariz. 304, 306, 241 P. 307 (1925) (abandonment requires "an intention to abandon"); *Botkin v. Kickapoo, Inc.,* 211 Kan. 107, 505 P.2d 749, 752 (1973) ("abandonment is the act of intentionally relinquishing a known right"); *Ritz,* 467 N.W.2d at 269 (finding personal representative's act of abandoning decedent's real estate irrelevant in characterizing cash buried on the property because there was no evidence that decedent abandoned the cash).

¶ 19 Jennings/McCallum cite *Michael v. First Chicago Corp.* to support their argument that Grande had "constructive knowledge" of the cash hidden within the house

---

5. Likewise, the money found in Spann's home belonged to him when he passed away and, thus, was part of his estate even though it remained undiscovered for nearly seven years.

and, therefore, abandoned the money when the house was sold. 487 N.E.2d at 409. There, the bank sold several filing cabinets "as is" to a used furniture dealer. *Id.* at 407–08. Some of the cabinets were locked and, to the bank's surprise, one of the locked cabinets contained several certificates of deposit worth approximately $6.6 million. *Id.* at 405. There was evidence that the certificates were supposed to be transferred to another storage area, but bank employees overlooked the task. *Id.* The court held, "[t]he relinquishment of possession, under the circumstances here, without a showing of an intention to permanently give up all right to the certificates of deposit is not enough to show an abandonment." *Id.* at 409.

¶ 20 The court also quoted the following excerpt from the American Law Reports article "Title to Unknown Valuables Secreted in Articles Sold":

> Where both buyer and seller were ignorant of the existence or presence of the concealed valuable, and the contract was not broad enough to indicate an intent to convey all the contents, known or unknown, the courts have generally held that as between the owner and purchaser, title to the hidden article did not pass by the sale.

*Id.* at 408 (citation omitted). Despite the argument that Grande had constructive knowledge that money and valuables had been hidden, and therefore abandoned the money when the house was sold, *Michael* demonstrates that the fact that neither party knew of the existence of additional ammo cans filled with cash and secreted inside the walls of the house is precisely why we cannot conclude that Grande abandoned the funds. *See id.* at 409.

¶ 21 Further, *City of Everett v. Sumstad's Estate,* 95 Wash.2d 853, 631 P.2d 366 (1981), does not support the argument that a seller may not use "conscious ignorance" as a shield "to protect her right to concealed valuables discovered after a sale." In *Sumstad's*

*Estate,* the buyers purchased a safe at an auction for $50. *Id.* at 367. They were told that the safe had a locked compartment and the auctioneer did not have the key. *Id.* at 368. After hiring a locksmith to open the compartment, the buyers found nearly $32,000. *Id.* at 367. The court, after examining each party's outward manifestations of intent, determined "that the parties mutually assented to enter into that sale of the safe and the contents of the locked compartment." *Id.* at 368.

¶ 22 Here, the house, unlike the safe, was not sold with the thought that there may be cash within its walls. The only evidence presented to the trial court was that Grande was unaware that anything else of value remained in the house. As a result, and unlike the contract in *Sumstad's Estate,* there was no mutual assent to sell the house with concealed valuables.

¶ 23 Based on the evidence before the trial court, there were no facts from which we could begin to infer that the estate intended to relinquish any valuable items that may have been secreted within the home. *See Benjamin,* 534 N.W.2d at 407 (rejecting the assertion that money found in airplane panel was abandoned because "[b]oth logic and common sense suggest that it is unlikely someone would voluntarily part with over $18,000 with the intention of terminating his ownership"). In fact, the evidence is to the contrary. Accordingly, summary judgment was appropriately granted.[6]

## CONCLUSION

¶ 24 Based on the foregoing, we affirm the summary judgment.

CONCURRING: ANN A. SCOTT TIMMER, and ANDREW W. GOULD, Judges.

---

**6.** Jennings/McCallum also argue that their rights to the money as the owners of the house are superior to any rights Bueghly may have. We need not address the issue because we find that the estate is the true owner of the money found in the ammo cans.